[No. E001919. Fourth Dist., Div. Two. Sept. 23, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER CLEMENT MOORE, Defendant and Appellant.

COUNSEL

Gary A. Myers, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Rudolf Corona, Jr., and Tim J. Nader, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUFMAN, Acting P. J.**—Defendant Peter Clement Moore was convicted by a jury of five counts of misdemeanor child annoyance or molestation (Pen. Code, § 647a), and acquitted of one misdemeanor and four child-related felony counts (Pen. Code, §§ 647a, 288, subd. (a), 273a). His contentions on appeal are that (1) the trial court erred in failing to grant a motion to sever the misdemeanor counts from the felony charges; (2) the court erred in failing sua sponte to instruct on the unanimity requirement as to the particular act underlying the charges; (3) the convictions with respect to one victim were not supported by substantial evidence; (4) a preliminary hearing defect rendered conviction on one count unlawful; and (5) the court erred in considering improper matter at sentencing.

### FACTS

An information charged defendant with three counts of felony child molestation (Pen. Code, § 288, subd. (a)) and one count of felony child endangerment (Pen. Code, § 273a) committed against Tania C., a minor under the age of 14. The information also charged defendant with six counts of misdemeanor child molestation or annoyance (Pen. Code, § 647a) committed against five different minor girls, Cherisse P., April G., Danielia G., Tiffany S., and Julie C.

Resolving, as we must, all evidentiary conflicts in the light most favorable to the judgment, the evidence is as follows: Defendant met Tania C., aged

12, and her mother Linda C. at a roller rink where the three practiced their competitive skating. The three became friends. Because defendant's job involved counseling, Linda C. discussed Tania's discipline and behavior problems with defendant. Linda C. arranged for Tania to spend a weekend in January 1984 with defendant and his wife for closer observation.

Tania testified that on the first morning of her visit, she and defendant played backgammon together. During the game, defendant wore only a robe and exposed his genitals to her.

Tania testified that later that day the two drove along a freeway to a skating rink. During the ride, defendant reached over, unbuttoned Tania's blouse, and placed his fingers inside her brassiere. He then opened his fly and had Tania stroke his penis. At the rink, Tania met her mother but did not tell her about the sexual activity.

Tania testified that after skating practice defendant drove her to his home. During the trip defendant again touched her breasts and had her touch his penis. Defendant also reached inside Tania's underwear and touched her genitals.

Tania testified that on the second morning of the visit defendant again exposed himself several times while wearing only a robe. Tania returned to her mother that day but said nothing to her about defendant's sexual conduct. However, she did tell her mother of defendant's conduct two days later when her mother asked her about her unauthorized absences from school.

Tania testified that before the weekend she spoke with her school counselor about a sexual incident with defendant that occurred a week before the weekend of the visit. The school counselor confirmed that Tania had described a molestation after the weekend visit, but could not recall Tania telling her of any sexual activity before the weekend of the visit.

Danielia G., aged 9, was the first misdemeanor victim to testify. After August 9, 1983, she lived in the duplex adjacent to that of defendant's. Until sometime near Christmas 1983, she and her friends would visit defendant nearly every afternoon in his back yard, where defendant kept several turtles and a pond of small fish. When visiting, the girls would knock on his back door and he would invite them in and provide food for the turtles. Except for one occasion when defendant wore shorts and a shirt, defendant always wore a robe. Danielia knew that defendant wore no underwear because during each visit (except the one when he wore shorts) defendant would lie in a lawn chair and spread his legs, exposing his genitals. Danielia further

testified to an incident in which defendant raised her shirt and with a stethoscope listened to her heartbeat.

April G., Danielia's sister, was the alleged victim of the acts charged in counts VI and VII. April testified that often after school she would go to visit defendant's back yard, where she would play with the turtles; that defendant always wore a robe during her visits; and that, except for one visit, "every time" when he had on "regular clothes," which he later changed, defendant would lie on a lawn chair and expose himself by spreading his legs. April also testified that defendant once placed a stethoscope under her shirt to hear her heartbeat.

Julie C., aged 10, testified that she also visited defendant in his back yard. Most often when she visited, defendant would wear a robe. In the back yard defendant would sit on a lawn chair and spread his legs, exposing his "private part." Defendant also exposed himself to Julie when the two played backgammon indoors and when they were washing defendant's car.

Julie recalled one incident in which she and other girls were in defendant's bathroom when defendant listened for her heartbeat by placing an instrument under her shirt. On cross-examination, Julie revealed that "about maybe three times" she and her friends had peeked from the neighboring yard through the fence to see defendant uncovered by his robe.

The testimony of eight-year-old Cherisse P. nearly matched that of the preceding misdemeanor victims. Cherisse was a friend of April's, Danielia's, and of another misdemeanor victim, Tiffany S. Almost every day during school, Cherisse would play in defendant's back yard with his turtles. She stated that both indoors and on a lounge chair outdoors defendant would spread his legs open while not wearing underwear. Cherisse's testimony differed from her friends in that she did not indicate that defendant had listened to her heartbeat. Although she recalled an incident in his bathroom when defendant had lifted Julie's shirt and listened to Julie's heartbeat, defendant did not attempt to listen to hers. On cross-examination, Cherisse admitted on one occasion she peeked over a fence to view defendant's genitals.

Tiffany S., aged 7, testified she met defendant at his house when accompanying April and Danielia. She too observed defendant's "private parts" on several different occasions when defendant would lie in a lawn chair wearing only a robe. Tiffany remembered one incident in which defendant pulled her shirt up and placed a listening device on her chest.

Testifying in his own behalf defendant denied exposing himself to Tania or committing any sexual acts with her. Defendant testified that during the

weekend visit Tania claimed she had previously engaged in sexual intercourse and oral sex. Defendant testified that Tania related having the symptoms of a vaginal infection, of which symptoms she had not yet told her mother.

Regarding the misdemeanor counts, defendant testified that from August through autumn 1983, he would sun himself while wearing a robe and boxer shorts or a towel covering his genitals. Later when defendant learned that the neighborhood children were watching him, he altered the position of the chair so that from the fence they could see only his back side. Later still, he stopped sunning himself.

Defendant estimated that the children visited him on about 12 occasions when they were not expected. Of these, he estimated that on five occasions he wore a robe without underwear. However, on these occasions he stated he took particular care in arranging his robe so that he was not exposed.

Defendant further testified that because of concern for his blood pressure, he owned a kit for measuring blood pressure which included a stethoscope. On one occasion, the children noticed the instrument in the living room and expressed curiosity. Accordingly, while in the living room he placed the ear pieces in Cherisse's ears, and the listening bell over his own heart. He then let the children experiment with each other—all but Julie C. wore bathing suit tops so their play "[r]equired no movement of clothing by anybody at all." At no time did he place the bell on a girl's chest. After the girls had listened to each other, defendant put the instrument away.

Tony Carrillo, who had known Tania and Linda C. for more than two years, testified that in his opinion neither Tania nor Linda were truthful people and had reputations of not being truthful. Sergio Tosto, Helen Clifford, and Marilu Bagley had all known Tania and Linda for at least three years. Each witness stated that Tania did not have a reputation for being truthful. Barbara Carter's videotaped testimony was that she had met Tania and Linda on several occasions and that Tania definitely was not to be believed.

In rebuttal, Riverside Police Officer Cory Sheffield testified about his interviews with several of the children while he was investigating the case. On February 2, 1984, he contacted Tania C. who told him of two instances of sexual molestation by defendant. After interviewing Tania, Officer Sheffield attempted to find other persons with knowledge of defendant's sexual behavior. At the home of their mother, Julia V., he interviewed Danielia and April G., as well as Cherisse P. He interviewed each child separately,

and did not tell the children what he had learned from each previous witness. Some time later, he interviewed Julie C. and Tiffany S.

The jury acquitted defendant of the four felony counts involving Tania C. and of one misdemeanor count (count IX) involving Tiffany S. The jury convicted defendant of five misdemeanor counts involving Cherisse P. (count V), April G. (counts VI and VII), Danielia G. (count VIII), and Julie C. (count X). The court granted defendant probation for a period of three years conditioned on his serving three consecutive six-month terms in the county jail for counts V, VI, and VII. Imposition of sentence on counts VIII and X was stayed pending defendant's successful completion of probation. This appeal followed.

## DISCUSSION

### I. *Joinder of Offenses*

Defendant contends the trial court abused its discretion in denying his motion to sever the felony charges, of which he was ultimately acquitted, from the misdemeanor counts, on five of which he was convicted. The contention is not meritorious.

Penal Code section 954, set forth in the margin,[1] provides that two or more different offenses may be joined in one accusatory pleading under separate counts, if the different offenses are "of the same class." Moreover, that section provides that the trial court "may order that the different offenses or counts in the accusatory pleading be tried separately or divided into two or more groups" to be tried separately "in the interests of justice and for good cause shown."

Within the meaning of section 954, offenses are "of the same class" if they possess common characteristics or attributes. (*Aydelott* v. *Superior Court* (1970) 7 Cal.App.3d 718, 722 [86 Cal.Rptr. 713].) Here, in denying defendant's severance motion, the court determined that all the charges

---

[1]Penal Code section 954 in pertinent part provides: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. . . . [P]rovided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

shared the common element of "lewd conduct toward young female minors." Manifestly they were of the same class.

■    Where the statutory requirements for joinder are met, denial of a motion for severance will be held improper only where substantial prejudice is shown. "Prejudice will not be assumed and must be clearly established by the defendant [citation]." (*People* v. *Garcia* (1985) 166 Cal.App.3d 1056, 1064 [212 Cal.Rptr. 822]; accord, *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 452 [204 Cal.Rptr. 700, 683 P.2d 699].)

Defendant can demonstrate no prejudice in this case. He was acquitted of all the felony charges, so no prejudice can be shown as to those charges. As regards the misdemeanor charges, the defense was that to the extent the episodes occurred they were accidental, so defendant's intent was clearly in issue. Because the exposure incidents were almost identical in character in both the felony and misdemeanor accusations, the evidence of those episodes would have been cross-admissible even in separate trials. Thus any real possibility of prejudice was precluded. (See *Williams* v. *Superior Court, supra,* 36 Cal.3d 441, 448.)

Defendant appears to argue that the joinder of sex offense charges is inherently prejudicial. However, the verdicts returned in this case belie the assertion: although faced with inflammatory charges, the jury clearly considered and weighed the evidence carefully as to each charge separately. The acquittals demonstrate a careful sifting of the evidence and a properly cautious verdict.

No abuse of discretion is shown.

## II. *Unanimity Instruction*

Defendant contends the court committed reversible error in failing to instruct sua sponte that the jury must unanimously agree on the particular act constituting the basis for its guilty verdict on each charge involving Penal Code section 647a (child annoyance or molestation). This contention raises two distinct problems: (1) whether a unanimity instruction was required by the evidence that defendant exposed himself to each victim on more than one occasion, and (2) whether such an instruction was required by the evidence that defendant also lifted the shirt or blouse of each 647a victim except one and touched her chest with a stethoscope. As to the first problem we conclude no such instruction was required. As to the second we conclude that even if such an instruction was required, its omission was harmless beyond a reasonable doubt. (See *People* v. *Gordon* (1985) 165

Cal.App.3d 839, 855 [212 Cal.Rptr. 174] and cases there cited.) We consider first the problem of the evidence of repeated genital exposure.

■ A long line of cases has held that where the jury is presented with evidence of more than one factual basis for conviction of the crime charged it must be instructed along the lines of CALJIC No. 17.01 that it must unanimously agree upon the act or acts constituting the crime.[2] (E.g., *People v. Diedrich* (1982) 31 Cal.3d 263 [182 Cal.Rptr. 354, 643 P.2d 971]; *People v. Williams* (1901) 133 Cal. 165 [65 P. 323]; *People v. Castro* (1901) 133 Cal. 11 [65 P. 13]; *People v. Gordon, supra,* 165 Cal.App.3d 839, 852-853 and cases cited; *People v. Epps* (1981) 122 Cal.App.3d 691 [176 Cal.Rptr. 332]; *People v. Alva* (1979) 90 Cal.App.3d 418 [153 Cal.Rptr. 644].) The instruction must be given sua sponte if not requested. (*People v. Gordon, supra,* 165 Cal.App.3d 839, 854; *People v. Epps, supra,* 122 Cal.App.3d 691, 701-704.)

"Emerging from this long line of cases is the so-called 'either/or' rule: when an accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Citations.]"[3] (*People v. Gordon, supra,* 165 Cal.App.3d 839, 853, fns. omitted.) In the case at bench, the court read neither CALJIC No. 17.01 nor No. 4.71.5 with regard to the charges under section 647a.

■ However, a well established exception to the "either/or" rule obtains where the act or acts constituting the charged crime amount to a "continuous course of conduct" and "the statute defining the crime may be interpreted

---

[2]CALJIC No. 17.01 (4th ed. 1979) provides: "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[3]CALJIC No. 4.71.5 (4th ed. 1986 pocket pt.) provides: "Defendant is charged in [Count ___ of] the information with the commission of the crime of _____, a violation of section _____ of the Penal Code, on or about a period of time between _____ and _____.

"In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act [or acts] constituting said crime within the period alleged.

"And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act [or acts] constituting said crime within the period alleged.

"It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like [citations]." (*People* v. *Madden* (1981) 116 Cal.App.3d 212, 218 [171 Cal.Rptr. 897].) "[S]tatutes susceptible of such an interpretation, e.g., child abuse (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299]), failure to provide for a minor child (*People* v. *Morrison* (1921) 54 Cal.App. 469, 471 [202 P. 348]), and pandering (*People* v. *White* (1979) 89 Cal.App.3d 143, 151 [152 Cal.Rptr. 312]) . . . are all areas where it is possible *a series of acts, which if individually considered, might not amount to a crime, but the cumulative effect is criminal.*" (*People* v. *Epps, supra,* 122 Cal.App.3d 691, 702 [176 Cal.Rptr. 332], italics added.)

The crime defined in Penal Code section 647a is such an offense. "The words 'annoy' and 'molest' are synonymously used [citation]; they generally refer to conduct designed 'to disturb or irritate, *esp*[*ecially*] *by continued or repeated acts*' or 'to offend' [citation]; and as used in this statute, they ordinarily relate to 'offenses against children, [with] a connotation of abnormal sexual motivation on the part of the offender.'" (*People* v. *Carskaddon* (1957) 49 Cal.2d 423, 426 [318 P.2d 4], italics added, citations omitted.)

Section 647a is the same in this regard as the statutes prohibiting child abuse and contributing to the delinquency of a minor. (Pen. Code, §§ 273a, 272.) The child abuse statute can be violated by a single act (see, e.g., *Lansdown* v. *Superior Court* (1970) 10 Cal.App.3d 604 [89 Cal.Rptr. 154]) or by a repetitive or continuous course of conduct (see *People* v. *Ewing, supra,* 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299]). Similarly, the statute which punishes contributing to the delinquency of a minor may be violated by a single act or a repetitive course of conduct. (Pen. Code, § 272; Welf. & Inst. Code, § 601; cf. *People* v. *Lowell* (1946) 77 Cal.App.2d 341, 345-347 [175 P.2d 846].) It is self-evident that by definition the offense of child annoyance or molestation may also be committed by a single act or a repetitive course of conduct.

*People* v. *Epps, supra,* 122 Cal.App.3d 691 is not at odds with this conclusion. In that case there was evidence of three distinct occurrences that could have been the basis for the conviction: the 14-year-old victim and defendant had "developed a relationship involving kissing . . . in the [mental health] unit's day room and in her own room . . ."; one incident in which the defendant fondled the victim in his car; and a third incident approximately two days later in a laundry room involving sexual activity culminating in the defendant's ejaculating. (*Id.,* at p. 694.) After analyzing the evidence, the court concluded "the multiple occurrences of annoyance

or molestation [under section 647a] here cannot properly be deemed a single annoyance or molestation" and determined that "[t]he proof in this case shows the child was not 'molested' by a series of acts, but by a single act on each occurrence." (*Id.*, at p. 703.)

In other words the court in *Epps* analyzed the evidence as showing three separate single acts, or more accurately two separate single acts and one distinct course of conduct, any one of which could have been the basis for the conviction. The evidence in this case is far different. Defendant's repeatedly exposing himself to the victims clearly constituted a single course of conduct as to the particular victim involved. As with child abuse, failure to provide for a minor child, and pandering, this repeated sexual exposure constituted conduct that might in a single instance be accidental and unintentional and be insufficient to violate the statute, but the cumulative effect of which was clearly violative of the statute. (See *Epps, supra,* 122 Cal.App.3d at p. 702.)

■ We turn to the problem presented by the stethoscope-touching evidence. If that conduct was sufficient in itself to constitute a violation of section 647a, which we shall assume arguendo, a unanimity instruction should have been given. However, the verdicts of the jury demonstrate beyond a reasonable doubt that none of the 647a convictions was based on the stethoscope-touching evidence, so the omission of a unanimity instruction in this regard does not require reversal. Beyond a reasonable doubt the error, if error there was, was harmless.

The jury convicted defendant of five counts of annoying or molesting four girls, including Cherisse. But Cherisse testified that defendant never attempted to lift her clothing and hear her heartbeat. On the other hand, the jury acquitted defendant of the charge of annoying or molesting Tiffany S. who did testify to such an incident. The conclusion is irresistible that having found one conviction without evidence of a stethoscope incident and having returned an acquittal as to one count in which the victim testified there was a stethoscope incident, the jury did not base its convictions on the evidence that such incidents occurred. That conclusion is further indicated by the additional circumstance that the misdemeanor victims' testimony was so similar as to be almost identical. There was virtually no basis on which the jury could have accepted the evidence as to one child and rejected it as to the others or vice versa.

We conclude there was no prejudicial error in the court's failure sua sponte to give an unanimity instruction along the lines of CALJIC No. 17.01.

III. *Counts VI and VII Involving April G.*

The jury convicted defendant on counts VI and VII, both of which alleged a violation of section 647a involving April G. Count VI alleged an annoyance or molestation between November 1 and November 30, 1983; count VII charged an annoyance between December 1 and December 31, 1983. Defendant contends the evidence does not support two separate convictions because it shows no more than repetitious conduct over a several month period without specificity as to time or any distinction between what occurred in November and what occurred in December. We must agree.

The evidence showed that April frequently visited defendant at his home from before the school year began in autumn 1983, up until the beginning of the police investigations in February 1984. April's testimony was that every time she would visit, defendant would expose himself to her while wearing his robe. The time frame of her testimony encompassed both November and December 1983 without temporal distinction. There was no basis therefore for separate convictions for the events in the months of November and December. To hold otherwise it would be necessary to conclude that defendant was guilty of a separate violation of section 647a every time he exposed himself to April. While that is theoretically possible, it would have necessitated a unanimity instruction because while only two counts were charged, the evidence presented was that defendant exposed himself every time April visited.

Reversal of one of the two counts is required. This will also necessitate resentencing because jail time was ordered served as a condition of probation on both counts VI and VII.

IV. *Evidence on Count V*

Defendant contends his conviction on count V for molesting Cherisse P. must be set aside because insufficient evidence was presented at the preliminary hearing to support this charge. This contention is devoid of merit.

Assuming arguendo that defendant is correct in asserting the evidence presented as to count V at the preliminary hearing was insufficient, that fact is of no consequence on review of a conviction following plenary trial. Even if insufficient evidence to support a charge is produced at the preliminary examination, if the case goes to trial and the defendant is convicted on evidence produced at trial sufficient to support that conviction, the conviction will be reversed "only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice . . . ." (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941]; *People* v. *Alcala*

(1984) 36 Cal.3d 604, 628 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People* v. *Flint* (1986) 180 Cal.App.3d 13, 17-18 [225 Cal.Rptr. 323]; *People* v. *Hampton* (1981) 116 Cal.App.3d 193, 198-199 [172 Cal.Rptr. 25].)

In the case at bench there is no contention the evidence produced at trial was insufficient to support defendant's conviction on count V, nor has defendant demonstrated any prejudice. The alleged preliminary examination error is irrelevant on appeal.

## V. *Sentencing Error*

Defendant contends "that the court erred in considering the felony charges which resulted in not guilty verdicts, as a basis for its sentence." We find no error.

Defendant was granted a probation for three years on condition that he serve three consecutive six-month jail terms on counts V, VI and VII. Sentence on counts VIII and X was stayed, pending successful completion of probation. This disposition followed a recommendation in the probation report that defendant serve a moderate jail term. The probation report stated, inter alia, that defendant had taken advantage of minors with family or emotional problems. Only Tania C., the victim of the felony counts, was demonstrated to have family difficulties, and defendant argues that inclusion of this asserted fact in the probation report was improper because it took account of the circumstances regarding the felony charges (counts I-IV) of which he was acquitted.

Case law refutes this argument. In sentencing, a trial court may consider "'responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.'" (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 754 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]; *People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 333 [197 Cal.Rptr. 509].) Such information may include "arrests which did not result in conviction . . . and raw arrest data [citation], so. long as the information is accurate and reliable [citation] and the judge is not misled into believing an arrest to be a conviction." (*People* v. *Rhines* (1982) 131 Cal.App.3d 498, 509 [182 Cal.Rptr. 478].) The reasoning in *Rhines* is applicable to this case: "Whatever facts the judge . . . considered were received by him in a manner that could not have misled him for he knew that defendant was acquitted in count II." (*Ibid.*)

Defendant's reliance on *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], is misplaced. In that case, in imposing aggravated terms, the court considered facts concerning an unrelated charge

which was dismissed pursuant to a plea bargain. The court remanded for resentencing, holding it fundamentally unfair to consider for sentencing purposes circumstances implicitly bargained to be outside the sentencing court's view. (*Id.*, at p. 758.) In this case, there is no bargain the terms of which were not honored, and we perceive no fundamental unfairness, indeed no unfairness whatever. There is no indication in the record that the asserted fact played any significant role in the court's imposition of the jail time condition on probation. The evidence established a persistent pattern of criminal conduct on the part of defendant involving numerous children and the condition of probation imposed by the court was quite lenient as compared with the 30 months in jail to which defendant could have been sentenced. Defendant was free to reject the terms of his probation and to opt to receive a fixed jail term.

### DISPOSITION

The judgment of conviction is reversed as to count VII only and the case is remanded for resentencing. In all other respects the judgment is affirmed.

McDaniel, J., and Rickles, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 22, 1987.