[No. C001182. Third Dist. Dec. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS WAYNE GUNN, Defendant and Appellant.

[Opinion certified for partial publication.†]

†See footnote 1, *post,* page 410.

COUNSEL

Dale S. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Michael T. Garcia and Jane L. Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Defendant appeals from the judgment following jury conviction of violation of Penal Code section 32, harboring, concealing or aiding a felon, Floyd Jones, knowing that Jones had committed the crime of attempted murder, and with intent that Jones escape arrest, trial, conviction or punishment. The principal issue on appeal arises from the fact the prosecutor did not elect the particular act upon which she relied to support the conviction nor did the trial court instruct the jury in terms of CALJIC No. 17.01 that all must agree on the act or acts constituting the offense. We shall hold that a violation of Penal Code section 32 may and here did consist in a course of continuous conduct thus obviating any need for the omitted election or instruction. Since we reject defendant's remaining contentions in the unpublished portion of this opinion, we shall affirm the judgment.[1]

On July 5, 1985, about 3 a.m., defendant and Floyd Jones went to Tony Miller's apartment in Chico to collect money Miller owed Jones from a narcotics deal. Jones knocked on the door and awoke Miller who went to the window, saw Jones and defendant at the door, and told them to come back later in the morning.

At 10:30 a.m. Jones and defendant returned in a car driven by defendant which he had borrowed from his landlord. Miller saw the car pull into the drive way of the apartment building and he walked out to meet Jones. Before Miller reached the car, Jones opened the passenger door, procured a rifle from the area between the front seats and repeatedly fired at Miller, hitting him six times. Defendant and Jones drove away. Miller was taken to a hospital where he underwent surgery and treatment for 11 days.

Defendant was arrested July 7, 1985. In a statement to the police defendant denied he drove Jones to the victim's apartment but later admitted that he had after he was confronted with inaccuracies in his story.

---

[1] The Reporter of Decisions is directed to publish all of this opinion except parts II, III and IV

Defendant told police that after the shooting he drove to Jones's house. There he suggested Jones "get rid of the g.d. gun . . . get it the hell out of this car . . . ." Defendant and Jones dismantled the weapon and hid the trigger mechanism and clip in some ivy near a neighbor's fence and the plastic stock and barrel on the neighbor's side of the fence. Defendant also suggested they park defendant's car and get into a different vehicle. They switched into Jones's pickup truck. Defendant and Jones then went to a restaurant and ate breakfast. After breakfast they went to an auto supply store. Knowing Jones had some money, defendant hoped Jones would pay for parts defendant wanted. Later, they went to another house where they worked on a broken-down car owned by defendant.

In his statement defendant told police that before the shooting he checked the clip in the rifle and it was empty; he thought Jones would use the rifle only to scare someone. Defendant admitted, however, that he knew Jones had been asking around for a weapon and that the only reason he wanted a gun was to shoot someone.

At trial, defendant testified he drove Jones because Jones was drunk. Since Jones had been stopped before for driving under the influence of alcohol, defendant felt sorry for him and decided to drive him to the victim's apartment. Defendant testified he did not fear Jones at that point and denied Jones threatened him to make defendant provide him with transportation. Defendant thought Jones would use the gun only to scare someone. After the shooting, however, defendant became afraid of Jones, although Jones never threatened him and was not a "revengeful-type person." Defendant acknowledged he "[himself] had on occasion threatened people with . . . a gun."

I

■ Defendant contends reversible error arose from the combination of the prosecutor's failure to elect the particular act upon which he relied for conviction and the trial court's failure to instruct the jury in terms of CALJIC No. 17.01.[2] Defendant appears to assert that each failure was itself prejudicial and that giving the jury instruction alone would not cure a failure to elect. The People acknowledge that neither the election was made nor the instruction given, but contend it was unnecessary so to elect or instruct because the charged offense consists of a continuous course of

---

[2] CALJIC No. 17.01 provides: "The defendant is charged with the offense of _____ . He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

conduct over time and thus constitutes an exception to the general rule upon which defendant relies. We agree with the People.

■ When an accusatory pleading charges a single criminal act, and the evidence shows more than one unlawful act, there is the possibility of a conviction even though the jurors are not in agreement as to the act upon which the conviction is based. (*People* v. *Castro* (1901) 133 Cal. 11, 13 [65 P. 13]; *People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971]; *People* v. *Madden* (1981) 116 Cal.App.3d 212, 215-216 [171 Cal.Rptr. 897].) It is the general rule in such cases that the prosecution either "must select the specific act relied on to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 . . . that it must unanimously agree beyond a reasonable doubt that defendant committed the same criminal act. (See *People* v. *Dunnahoo* [1984] 152 Cal.App.3d [561] at pp. 568-570, [fn. omitted] and cases cited therein, including *People* v. *Diedrich, supra,* 31 Cal.3d at pp. 280-281.) [fn. omitted.]" (*People* v. *Gordon* (1985) 165 Cal.App.3d 839, 853 [212 Cal.Rptr. 174].) (Original italics.)

In certain narrow circumstances, however, neither election nor instruction is required. This exception actually has two discrete aspects. "The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation omitted.] The second is when . . . *the statute* contemplates a continuous course of conduct of a series of acts over a period of time. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299] [child abuse].)" (Italics added, *People* v. *Thompson* (1984) 160 Cal.App.3d 220, 224 [206 Cal.Rptr. 516].)

Penal Code section 32, for violation of which defendant was convicted, provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

■ Defendant relies on *People* v. *Metheney* (1984) 154 Cal.App.3d 555 [201 Cal.Rptr. 281] for the proposition that the crime of accessory to a felony does not fall under the exception to the general rule. (*Id.*, at pp. 561-563.) The *Metheney* court concluded the several acts of aiding a felon shown by the evidence in that case were not so closely linked temporally as to form one transaction. The court also concluded, without reasoned

analysis, that the offense as defined by statute is not the kind which may consist of a continuous course of conduct.[3] (*Id.,* at p. 562.)

In *Metheney,* the defendant was convicted of being an accessory after the fact to a series of rapes based on his commission of three separate acts of aiding, harboring or concealing the principals in the crime. First, directly after the completion of the rapes, the defendant warned the victim not to go to the police. Second, several months later, the defendant appeared at the principals' preliminary hearings to support their defense and to intimidate the victim. Third, after the preliminary hearings, the defendant falsely stated to investigating officers that the victim had consented. (*Id.,* at p. 560.)

We agree with *Metheney* that the first aspect of the exception to the general rule requiring election or instruction was inapplicable in that case. Obviously, the three acts, separated by several months, were not committed so closely together that they formed part of one and the same transaction. We also agree that the second aspect of the exception was inapplicable to the facts in *Metheney.* The defendant's misconduct at the time of the crime was separate and distinct from his misconduct several months later and clearly not part of the same continuous course of conduct. However, we disagree with the sweeping dictum in *Metheney* that Penal Code section 32 can never be violated by a continuous course of conduct. (Compare *People v. Moore* (1986) 185 Cal.App.3d 1005, 1015-1016 [230 Cal.Rptr. 237] [violation of Pen. Code, § 647a, annoying or molesting a child, is a continuous crime] with *People v. Epps* (1981) 122 Cal.App.3d 601, 703 [176 Cal.Rptr. 332] [violation of Pen. Code, § 647a is not a continuous crime].)[4] We are

---

[3] Citing *People v. Diedrich, supra,* 31 Cal.3d 263, 281-282, *Metheny* also asserted that ". . . the Supreme Court has refused to consider analogous crimes that involve preliminary steps leading up to the real evil the law seeks to prevent - here, frustration of a criminal prosecution - as within the continuous conduct exception." (154 Cal.App.3d at p. 562.)

In *Diedrich,* the court explained that the statute condemning bribery was similar to the statute condemning abortion in that both made criminal only the acts preliminary to the real evil sought to be avoided—official corruption, and induced miscarriage—without requiring that those objectives actually be achieved. (31 Cal.3d at p. 281.) The court noted that an early appellate opinion, which treated abortion as a continuing offense because it involved preliminary steps, was disapproved by a subsequent appellate opinion. Thus, the *Diedrich* court implies that simply because an offense prohibits such preliminary steps it is not per se a continuing crime. (*Id.,* at pp. 281-282.) *Diedrich* does not hold, as suggested in *Metheney,* that such preliminary crimes may never come within the continuous conduct exception.

[4] *Epps* holds the trial court committed reversible error in failing to instruct in terms of CALJIC No. 17.01 because defendant was charged with only one count of annoying or molesting (Pen. Code, § 647a) but the evidence showed defendant annoyed or molested the victim on three separate occasions. (122 Cal.App.3d at pp. 694-695, 702-704.) *Epps* was limited to its facts in *Moore,* which held that the offense of annoying or molesting a minor is a continuing crime. (185 Cal.App.3d at pp. 1015-1016.) In *Moore* the defendant, over a period of several months, exposed himself to four neighborhood girls. (*Id.,* at pp. 1009-1010.) The court

satisfied that a violation of Penal Code section 32 can consist of a continuous course of conduct and that this is such a case.

We described the second aspect of the exception in *People* v. *Ewing, supra,* 72 Cal.App.3d 714 and applied it to a prosecution for violation of Penal Code Section 273a, subdivision (1), child abuse likely to cause great bodily harm or death. In *Ewing* the information charged that the crime occurred during a four-and-a-half-month period. We explained, "Although the child abuse statute may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct. [Citations.] Here, the information alleged a course of conduct in statutory terms which had occurred between two designated dates. The issue before the jury was whether the accused was guilty of the course of conduct, not whether he had committed a particular act on a particular day." (*Id.,* at p. 717.)

The best description of the second aspect of the exception to the general rule requiring election or instruction is found in *People* v. *Madden, supra,* 116 Cal.App.3d 212, 218: "Conceptually, the exception of continuous conduct resulting in but one offense is quite limited. There is a fundamental difference between a continuous crime spree and continuous conduct resulting in one specific offense. *The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature* such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like [citations]." (Italics added.) *Madden* holds the exception inapplicable to the crimes of sodomy and oral copulation, implicitly reasoning that those crimes occur in one instant, rather than over a period of time. (*Ibid.;* see also *People* v. *Gordon, supra,* 165 Cal.App.3d at p. 855, fn. 18 [sodomy statute does not contemplate conduct consisting of a series of acts over a period of time].)

In *People* v. *Thompson, supra,* involving a prosecution for spousal battery, the court explained that "[c]ases applying the continuous conduct exception have generally relied on statutory interpretation to justify a conclusion that the nature of the crime is ongoing." (160 Cal.App.3d at p. 225.) The court noted the definition of the crime of spousal battery (Pen. Code, § 273.5) parallels the definition of child abuse (Pen. Code, § 273d), and concluded, relying on *Ewing,* that the statute defining spousal battery contemplates a continuous crime. (*Id.,* at pp. 225-226.) *People* v. *Lewis* (1978) 77 Cal.App.3d 455 [143 Cal.Rptr. 587, 3 A.L.R.4th 1185] similarly focused

held, "Defendant's repeatedly exposing himself to the victims clearly constituted a single course of conduct as to the particular victim involved." (*Id.,* at p. 1016.)

on the statutory definition of the offense in determining whether the crime is continuous in nature. There the court noted the statute defining pimping (Pen. Code, § 266h) is violated by any person who ". . . lives or derives support or maintenance" from a prostitute's earnings: "Reasonable interpretation of the statutory definition leads to but one conclusion—that the legislative intent was that living or deriving support or maintenance from the earnings of a prostitute or proceeds of her prostitution knowing her to be a prostitute is an ongoing continuing offense that occurs over a period of time." (At pp. 460-462.)

*Thompson* and *Lewis* share the insight that certain verbs in the English language denote conduct which occurs instantaneously, while other verbs denote conduct which can occur either in an instant or over a period of time. ■ Thus, the Legislature has defined burglary as occurring when a person *enters* a defined structure with felonious intent. (Pen. Code, § 459.) The crime is completed at the moment the person enters the structure. (See *People* v. *Brady* (1987) 190 Cal.App.3d 124, 133 [235 Cal.Rptr. 248].) By its choice of the verb "enters," the Legislature intended to prohibit a certain type of conduct which is instantaneous in nature. On the other hand, a person may derive support from a prostitute either in one moment in time, when the prostitute first turns over the proceeds of her business, or over the course of many moments in time, if she continues to do so. Common sense tells us certain types of conduct occur instantaneously, such as murder, burglary, battery or sodomy, while other types of conduct may be committed in one moment or over a period of time, such as child abuse, spousal abuse or contributing to the delinquency of a minor.

The continuous conduct exception must certainly include the crime defined by Penal Code section 32, which is violated by one who "harbors, conceals or aids" a known felon with the specific intent that the felon escape arrest, trial, conviction or punishment. The verbs used to define the crime—harbor, conceal, aid—denote conduct which may occur either instantaneously or over a period of time.

■ In the instant case, the prosecutor charged defendant with violation of Penal Code section 32 in the language of the statute, rather than by describing the specific acts of aiding, harboring or concealing shown by the evidence. Defendant admitted he committed several acts any of which alone might constitute the actus reus of the offense, i.e., he drove Jones from the crime scene, he suggested Jones conceal the weapon and then drove to Jones's residence where they did so. In her closing argument, the prosecutor asserted that because defendant admitted each of those acts the sole question was whether he committed them with the specific intent that Jones avoid or escape arrest, conviction or punishment. The prosecutor argued

that the fact defendant committed all of those acts was strong circumstantial evidence he did so with that specific intent. Thus, the case was charged and tried on the theory the crime consisted of a continuous course of conduct rather than a series of separate acts each of which might in itself constitute the offense. The primary question for the jury was whether the course of conduct was committed with the necessary specific intent, not whether any of the separate acts which together constituted that course of conduct were committed with specific intent.

The continuous conduct aspect of the exception to the general rule applies in this case because Penal Code section 32 contemplates conduct which can occur either in an instant or over a course of time, and the prosecutor charged and argued the case as a continuous crime rather than as a series of separate, culpable acts. Thus, we conclude the trial court did not err in failing to put the prosecutor to an election or to instruct the jury in terms of CALJIC No. 17.01.

## II - IV*

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Evans, J., and Blease, J., concurred.

---

* See footnote 1, *ante*, page 410.