Filed 2/28/25  P. v. Chism CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083673 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS324638) |
| WILLIAM RAY CHISM II, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos Varela, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Robin Urbanski and Flavio Nominati, Deputy Attorneys General for Plaintiff and Respondent.

The court granted the People's motion to consolidate three separate cases alleging one count each, over appellant William Ray Chism II's objection.  The People thereafter filed a consolidated information alleging

Chism made a criminal threat (Pen. Code[1], § 422; count 1), possessed a weapon at a penal institution (§ 4502, subd (a); count 2), and committed battery by gassing (§ 243.9, subd. (a); count 3). They further alleged that Chism suffered three prior convictions for serious felonies, and four prior convictions that qualified as strikes within the meaning of the "Three Strikes" law. (§ 667 subds. (b)-(i); 668; 1170.12.)

A jury convicted Chism of counts 1 and 2 but found him not guilty of count 3. In bifurcated proceedings, Chism admitted a prior conviction under section 422, a dangerous or deadly weapon use enhancement allegation (§ 1192.7, subd. (c)(23)), and an allegation that he had served a prior prison term. The court sentenced Chism to eight years four months in state prison.

Chism contends: (1) the court erroneously joined the cases, and (2) insufficient evidence supports his weapon possession conviction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Count 1—Threat*

A San Diego Sheriff's Department sergeant testified that in February 2023, while he was working at the San Diego Central Jail, Chism complained to him about inmates of a different race sharing his living module. Chism was in shackles but had one arm free. Chism was angry, animated, and yelling, and identified himself as a "Hells Angels" criminal street gang member while pointing to his arm tattoo. He called the San Diego Sheriff's Department a racist organization. As the sergeant turned away, Chism stood up, lunged toward him in a threatening manner, and yelled, "I will fucking stab you," and "I will fucking kill you." When the deputies tried to escort Chism, he kept thrashing his body and trying to get closer to the sergeant.

---

[1] Undesignated statutory references are to the Penal Code.

2

They eventually brought him down to the ground. Chism yelled that "he had shanks in his cell."

Chism also screamed that the sergeant was "green lit," which the sergeant explained gang members use to mean "that you are to be killed on-sight" by "other inmates that have an association with the person issuing the green light." Chism tried to spit on the sergeant, and later told him he would kill him "with a shank" if he ever saw him again in the jail's dayroom. The sergeant placed a "spit sock" over Chism's head to prevent him from further spitting on deputies, and he was eventually subdued.

Another sergeant testified that while he attempted to escort Chism back to his cell, Chism yelled at him, "I'm going to kill you, White boy."

A video recording of a portion of this incident was played for the jury.

*Count 2—Weapon Possession*

A San Diego Sheriff's Department deputy who was employed at the George Bailey Detention Facility testified about an October 2023 incident: "[A]fter serving lunch, I was trying to close the cuffing ports that [are] located on each cell. At that point when I approached [Chism's] cell, he was refusing . . . to let me allow him to close the cuffing port but instead he had his arm sticking out, and I noticed he was holding an object sharp to a point, orange in color. And he was just saying, 'Hey. Don't approach me. Don't come here because whoever comes around here, I'm going to stab him.' " For approximately 15 minutes, Chism yelled, "Nobody get close to me" and, "I have a shank." Chism waved the weapon back and forth.

The deputy described the weapon he saw: "It was like a toothbrush made as a jail weapon." He added, "So it was pretty much just like the handle. . . . [I]t was sharp like—like pointed because they're regular[ly] round, but this one is like pointy kind of like—looked like a knife."

The prosecutor asked the deputy, "Are you familiar with what these improvised weapons can do to other inmates or employees at these facilities?" He replied, "I experienced before people getting stabbed. I transported people with injuries coming from weapons that . . . were made in the jail settings. And I've seen people, you know, how they get slashed. And not only that space . . . but we also had training on situations like that."

After some deputies forcibly removed Chism from his cell, they found no makeshift weapon there. But the deputy testified he believed Chism could have flushed it down the toilet located in his cell, which he alone occupied.

The jury viewed a video recording of Chism's extraction from his cell.

*Count 3—Battery by Gassing*

A San Diego Sheriff's Department sergeant testified that in October 2023, Chism was in the George Bailey Detention Facility's dayroom and refused to return to his cell. Chism was upset because he was trying to make a phone call, but was hindered by noise from other inmates. A tactical team of several deputies was enlisted to return Chism to his cell. Three hours later, when the sergeant tried to talk to him, Chism yelled, "Fuck you. I have a shank for you. Fuck you." Chism spat on the face of the sergeant, who was not wearing a face guard or mask.

DISCUSSION

I. *Joinder*

Chism contends joinder was improper: "[T]he three actions involved different offenses, against different victims, that occurred at different times and involved different witnesses and evidence, and that as a result, the primary justifications for such consolidation or joinder—i.e. judicial economy and the cross-admissibility of evidence—were not present in this case. In addition, even if the statutory requirements for joinder were arguably met,

4

the trial court nonetheless abused its discretion in granting the People's motion and refusing to sever the cases against [him]."

A. *Background*

At a hearing on the People's joinder motion, the prosecutor argued the cases shared common characteristics; specifically, in each instance Chism engaged in threats of violence and assaultive behavior against detention officers while in custody.

Defense counsel countered: "We have several weak cases against [ ] Chism that are tied together and that will prejudice the jury . . . and judicial economy cannot be the reason—the only reason for the court to do this. And based on due process and fair trial considerations, we would request that the motion for joinder be denied."

The court granted the motion: "The three cases that the People are requesting to have joined are properly joined because . . . each case [was] committed while the defendant was in [a] penal, carceral environment. They all share the quality of violence[ ], assaultive nature, and defiance, and disobedience in a penal environment. . . . But even if the counts are properly joined, the court, in the interest of justice and/or good cause shown, has [ ] discretion to order them to be tried separately. [¶] Generally, when the statutory requirements of joinder are met, the defendant must make a clear showing of prejudice before severance must be granted. In this case, I'm finding that [ ] Chism has not made a . . . clear showing of prejudice. There does not appear to be a real concern for prejudice in this case. There does not seem to be much occasion for cross admissibility. This factor alone is not dispositive. [¶] But the court examined other factors regarding prejudice. Will it inflame the jury against the defendant? Well, the defendant's conduct and liability appear[ ] to be equally egregious, willful, and offensive in each

5

case, so there's no basis to conclude that his actions in one count would prejudice him so heavily relative to the other counts in the eyes of the jury. And we have [the factor of whether] a weak case is bolstered by a stronger case. [¶] And, again, the court does not find that anything suggests that this would be a factor in both cases. They're very similar in that it is the victim-witness identification testimony and any surveillance that would be presented in this case. So there is no basis to conclude that the jury would bootstrap guilt as to one count or counts based on the strength of the evidence against him in other counts. [¶] This case is not a capital offense, and also the court considered judicial economy."

B. *Applicable Law*

Section 954 authorizes the joinder of two or more different offenses that are "connected together in their commission" or that are "of the same class of crimes or offenses." Joinder of charges is favored because it avoids the increased expenditures of funds and judicial resources that may result from separate trials. (*People v. Simon* (2016) 1 Cal.5th 98, 122; *People v. Merriman* (2014) 60 Cal.4th 1, 37.) Thus, joinder " 'is the course of action preferred by the law,' " but "a trial court [nonetheless] has discretion to sever properly joined charges in the interest of justice and for good cause." (*Simon*, at p. 122.)

" 'When exercising its discretion, the court must balance the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.' [Citation.] To successfully claim that the trial court abused its discretion in denying a motion to sever, a ' " 'defendant must make a clear showing of prejudice' " ' by demonstrating that the denial 'exceeded the bounds of reason.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 689.)

6

In assessing whether the court's order denying the severance motion constituted an abuse of discretion, we review four factors based on the record before the trial court: "[F]irst, we consider 'whether evidence of the crimes to be jointly tried is cross-admissible.' [Citation.] Second, we address whether the charges are especially inflammatory. Third, we consider whether a weak case has been joined to a strong one 'so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges.' [Citation.] Finally, we consider whether joinder renders the case capital when it would not otherwise have been." (*People v. Vargas* (2020) 9 Cal.5th 793, 817.)

Even if we conclude that the trial court was well within its discretion in denying severance pretrial, we must also discern whether events *after* the court's ruling demonstrate that joinder actually resulted in "gross unfairness" amounting to a denial of defendant's constitutional right to fair trial or due process of law. Whether joinder worked a gross unfairness turns upon assessing whether it was reasonably probable that the jury was influenced by the joinder in its verdict of guilt. (*People v. Vargas, supra,* 9 Cal.5th at p. 819.)

C. *Analysis*

The charged crimes met the statutory requirements for joinder because they were connected together in their commission. (§ 954.) As set forth above, the three crimes all occurred in the same year, in detention facilities where Chism was incarcerated, and involved his verbal threats or physical acts of aggression towards detention officers. This court independently reviews the legal question of whether two or more offenses may be joined as being "connected in their commission" or "of the same class." (*People v. Alvarez* (1996) 14 Cal.4th 155, 188.)

7

We turn to whether the court's failure to sever the charges prejudiced Chism. First, even if we agree with the trial court that the evidence here was not cross-admissible as the incidents took place on different dates, in two separate detention facilities and involved different detention officers, that factor alone is not dispositive. "[E]ven if the evidence underlying these charges would *not* be cross-admissible in hypothetical separate trials, that determination would not itself establish prejudice or an abuse of discretion by the trial court in declining to sever properly joined charges." (*People v. Soper* (2009) 45 Cal.4th 759, 775.)

Courts have found no due process violation from joinder where, as here, evidence of each crime is simple and distinct, even if that evidence is not admissible in separate trials. (*People v. Soper*, *supra,* 45 Cal.4th at p. 784.) The incident involving Chism's threat that the deputy was green lit had simple and distinct evidence separating it from the incident involving the cuffing port and the toothbrush repurposed into a weapon. Here, the fact the jurors could not reach a verdict on the battery by gassing charge clearly demonstrates the jurors "considered and weighed the evidence carefully as to each charge separately." (*People v. Moore* (1986) 185 Cal.App.3d 1005, 1013.)

Third, to demonstrate prejudicial spillover, the defendant needs to demonstrate that the trial court joined a weak case with a strong case so that the totality of the evidence altered the outcome as to some or all of the charges. (*People v. Soper*, *supra,* 45 Cal.4th at p. 775.) Here, the three cases involved similar disruptive conduct and when taken together did not heighten the likelihood of inflaming the jury.

Because no charged offense converted this into a capital case, this factor did not cause prejudice.

8

We next decide " 'whether events *after* the court's ruling demonstrate that joinder actually resulted in "gross unfairness" amounting to a denial of defendant's constitutional right to fair trial or due process of law.' " (*People v. Simon, supra*, 1 Cal.5th at p. 129.) Whether joinder worked a gross unfairness turns upon assessing whether it was "reasonably probable that the jury was influenced by the joinder in its verdict of guilt." (*Id.* at p. 130.) Here, "strong evidence warranting conviction" supported the two convictions. (*Ibid.*) In each instance, the experienced detention officer who was on the receiving end of Chism's threats and aggressive behavior testified. As to the weapon possession charge, although no weapon was found, the jury could have reasonably concluded based on the trial record that the officer was familiar with the toothbrush issued to the inmates and correctly perceived that Chism was waving a modified one, referring to it as a shank.

## II. *Sufficiency of the Evidence Claim*

Chism contends: "[T]he evidence adduced at trial was insufficient, as a matter of law, to establish beyond a reasonable doubt that the object possessed by [him] constituted an actual weapon, and in particular one of the weapons enumerated in [section 4502]. To the contrary, the undisputed evidence was that the alleged victim [ ] could not conclusively identify the object, and instead believed it to be a toothbrush; that no such object was found during a thorough search of [his] cell following the incident; and that there was no evidence, other than pure speculation, to indicate that [he] had flushed a weapon down the toilet, or otherwise disposed of it."

" 'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the

9

defendant guilty beyond a reasonable doubt.' " (*People v. Jurado* (2006) 38 Cal.4th 72, 118.) The standard of review is "highly deferential" to the verdict. (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) " 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.' " (*People v. Westerfield, supra,* 6 Cal.5th at p. 713.)

Section 4502, subdivision (a) provides: "Every person who, while at or confined in any penal institution, while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees of any penal institution, possesses or carries upon his or her person or has under his or her custody or control any instrument or weapon . . . or sharp instrument . . . is guilty of a felony[.]"

As set forth above, the deputy who Chism threatened with the weapon had many years of experience with weapons in detention facilities. He described the weapon he saw, saying it looked like a modified, jail-issued, travel-size, toothbrush. The handle, which was normally rounded, had been filed down to a sharp point. He also testified Chism was swinging his arm back and forth, and yelling he possessed a "shank." Chism also yelled persistently, "Nobody get close to me otherwise I'm going to stab you." That direct evidence suffices to support the conviction.

Chism contends that since no weapon was found, there was insufficient evidence that he possessed a weapon. However, the jury was entitled to believe the deputy's reasonable testimony that Chism could have flushed the weapon down the toilet. Chism certainly had the motive to do so—to avoid a serious charge and conviction. He also had the opportunity to do so, as he was the sole occupant in his cell at the time of the incident.

10

## DISPOSITION

The judgment is affirmed.


                                                                O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

11