[Crim. No. 11610. Fourth Dist., Div. One. Feb. 24, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ELMER CLARENCE HAMPTON, Defendant and Appellant.

COUNSEL

Nicholas De Pento for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Patricia D. Benke and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**—A jury convicted defendant Elmer Clarence Hampton of two counts of conspiracy to commit the crimes of grand theft auto, grand theft and forgery (Pen. Code, §§ 182, subd. 1, 487, subd. 3, 487, subd. 1, 470) and seventeen separate substantive offenses, including grand theft auto, forgery, possession of completed check with intent to defraud (Pen. Code, § 475a), grand theft and attempted grand theft (Pen. Code, §§ 664, 487, subd. 1). Hampton was sentenced to prison for an aggregate term of five years and four months. He appeals the judgment asserting (1) insufficiency of the evidence before the committing magistrate resulted in a defective bind over for trial; and (2) the superior court erred in denying his Penal Code section 995 motion (based upon the same claimed insufficiency of the evidence) to dismiss counts two through four, nine through seventeen, and twenty through twenty-one. Hampton does not challenge the sufficiency of the evidence to support his multiple convictions by the jury; nor does he allege any error whatsoever committed in the course of trial or at sentencing. Thus Hampton asks us to reverse a perfect trial.[1]

DISCUSSION

I

Hampton relies for this sweeping contention upon general language found in *People* v. *Phipps* (1961) 191 Cal.App.2d 448, 454 [12 Cal.

---

[1](See Iungerich, *Reversing Perfect Trials, California Style: Time for a Re-evaluation of the Effect of Errors in Pretrial Commitment Proceedings* (1973) 48 L.A. Bar Bull. 88.)

Rptr. 681], and *People* v. *James* (1971) 17 Cal.App.3d 463, 465 [95 Cal.Rptr. 121], to the effect that an order denying a Penal Code section 995 motion to dismiss, while not appealable "is reviewable on appeal from the judgment." (*Phipps, supra,* 191 Cal.App.2d 448, 454.) Underlying his express assertion is the equally broad proposition that if a defendant is not legally bound over, and the trial court nonetheless erroneously denies the motion to dismiss under Penal Code section 995 and proceeds to trial, the resulting conviction must be reversed, citing *People* v. *Elliot* (1960) 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225]. This *Elliot* "per se reversible error rule" has been subject to judicial and scholarly criticism since its announcement in 1960.

■ *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304], decided seven years after *Elliot, supra,* 54 Cal.2d 498, held the defendant was prejudicially affected by the failure to secure the attendance at the preliminary hearing of an informer whose testimony might have established the affirmative defense of entrapment, and as a consequence the issuance of the writ was warranted. The Supreme Court, however, saw fit to point out: "[W]*hen a defendant fails to challenge, by motion to dismiss and writ of prohibition, errors of the magistrate in ruling on the admissibility of evidence* (as distinguished from such fundamental deprivations as denial of counsel or of an unbiased jury), *he will ordinarily receive a fair trial if correct rulings are thereafter made at the trial on the merits; in that event, on an appeal from a judgment of conviction the errors may be found to have been cured in the subsequent proceedings....*" (*Id.,* at pp. 880-881; italics added.)

*People* v. *Neal* (1942) 53 Cal.App.2d 379, 383 [127 P.2d 996] (referred to in *Jennings*), offers another example of errors of the most serious nature committed in the course of the preliminary hearing yet remedied in the ensuing proceedings and therefore not requiring the reversal of the conviction. In *Neal,* the defendant offered testimonial evidence at the preliminary hearing to show his confession was not voluntary but, rather, was obtained by coercion. The magistrate denied the request of the defense and found the testimony of the police officer alone provided sufficient proof for probable cause necessary to sustain the commitment. At trial, the court, sitting without a jury, heard the precluded defense testimony to the effect defendant's confession was the result of a beating by the police. Prosecution evidence was offered to the contrary. The trial court resolved the conflict in favor of the People

and found the defendant guilty of the crime charged. The appellate court agreed with the trial court; the magistrate had committed grievous error in refusing to admit defense evidence on the voluntariness of the confession. The Court of Appeal, however, affirmed the judgment of conviction underscoring "before the trial court found appellant guilty it permitted him to introduce all the evidence he had available concerning the means by which his confession was obtained, *thus effectively curing the error committed by the magistrate's ruling at the preliminary hearing.*" (*People* v. *Neal, supra,* 53 Cal.App.2d at p. 383; italics added.)

The following rationale has been articulated by a host of cases to avoid the per se reversible error rule: Penal Code section 995 gives a defendant the opportunity, by motion made before entering his plea, to challenge the regularity of the grand jury proceedings or the preliminary examination, as well as the existence of probable cause. Insufficiency of the evidence before the grand jury or at the preliminary examination is "jurisdictional" only in a special procedural sense that the ruling of the trial court [on the motion under Penal Code section 995] may be reviewed *by writ of prohibition under* Penal Code section 999a. (See *Guerin* v. *Superior Court* (1969) 269 Cal.App.2d 80, 83 [75 Cal.Rptr. 923].) Such defect has been held not to be jurisdictional in the fundamental sense; it was subject to waiver. (*People* v. *Warburton* (1970) 7 Cal.App.3d 815, 821-822 [86 Cal.Rptr. 894]; see also *People* v. *Martin* (1973) 9 Cal.3d 687, 693 [108 Cal.Rptr. 809, 511 P.2d 1161]; *People* v. *Stanworth* (1974) 11 Cal.3d 588 [114 Cal.Rptr. 250, 522 P.2d 1058]; *People* v. *Meals* (1975) 49 Cal.App.3d 702, 706 [122 Cal.Rptr. 585]; *People* v. *Partlow* (1978) 84 Cal.App.3d 540, 555 [148 Cal.Rptr. 744].)

In *People* v. *Partlow, supra,* 84 Cal.App.3d 540, 555, the court said: "Defendant's argument, predicated on *Elliot, supra,* . . . that the reversal of conviction is mandated because upon proper objection of the defendant, the jurisdiction of the superior court terminates and renders the subsequent proceeding null and void [citation], is further negated by subsequent case law. [Citations.] All hold that insufficiency of evidence before the grand jury or at the preliminary examination is jurisdictional in the special procedural sense that the ruling of the trial court may be reviewed by writ of prohibition under section 999a of the Penal Code, *but the defect is not jurisdictional in the fundamental sense because it is subject to waiver.*" (Italics added.)

And the Supreme Court said in *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 713 [135 Cal.Rptr. 392, 557 P.2d 976]: "The jurisdictional problem is akin to that resulting from a defective commitment which, *if subjected to a timely and proper attack*, is deemed to fail to confer jurisdiction on the superior court to entertain criminal proceedings. [Citation.] In such an instance, however, the commitment is only voidable (*id.*) and unless voided by a proper and timely attack the court is not divested of jurisdiction to proceed against the accused."

And most recently the Supreme Court in *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941], engaged in a parallactic analysis of this problem and arrived at the identical end point as did *People* v. *Partlow, supra*, 84 Cal.App.3d 540, and its precursive authorities. *Pompa-Ortiz* overruled *People* v. *Elliot, supra*, 54 Cal.2d 498, insofar as it requires reversal of a judgment of conviction because of errors committed in the course of the preliminary hearing without first assessing the prejudicial effect of such error.

Said the Supreme Court: "*Elliot* advances the broad proposition that if the defendant has not been 'legally committed' and the trial court nonetheless erroneously denies the motion to set aside the information and permits the action to proceed to judgment, the resulting conviction must be reversed. In *Elliot* the magistrate allowed a newspaper reporter to remain in the courtroom over defendant's objections and in violation of section 868. The trial court denied her motion to set aside the information. We reversed the conviction. Although we discussed the threat to a fair trial presented by the failure to close the preliminary examination, [fn. omitted] we made no assessment of prejudice and applied a rule of per se reversal, holding that the superior court lacked jurisdiction to proceed because the commitment was illegal. We further held that the error was not and could not be cured by a subsequent fair trial in superior court." (P. 527.) And reasoned: "The source of the difficulty in *Elliot* is the uncritical use of the term 'jurisdiction' when assessing the effect of an illegal commitment on the trial in superior court. Until 1942 and *Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319 . . ., sanctioning the writ of prohibition in the appellate court as a vehicle for pretrial review of the superior court's refusal to set aside an information on probable cause grounds, the cases reversing convictions for erroneous denial of motions to set aside the information did not speak in jurisdictional terms. (See, e.g., *People* v. *Napthaly, supra*, 105 Cal. 641.) *Elliot* utilized the *Greenberg* language in fashioning the per se reversal

rule, thereby introducing into the field of appellate review the concept of jurisdiction used in the prohibition context. In the latter context, however, jurisdiction has a much broader meaning than does jurisdiction in the fundamental sense of legal power to hear and determine a cause. The presence of a jurisdictional defect which would entitle a defendant to a writ of prohibition prior to trial does not necessarily deprive a trial court of the legal power to try the case if prohibition is not sought. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288-291 . . . .)" (Pp. 528-529.) And held: "Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. *The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects.*" (P. 529; italics added.)

The appeal court in *People* v. *Chambers* (1980) 108 Cal.App.3d 985, 990-991 [166 Cal.Rptr. 815], confronted the precise claim of error as here made—insufficiency of the evidence at the preliminary hearing. The court, following *People* v. *Pompa-Ortiz, supra*, held: "Where, as here, the evidence produced at trial amply supports a conviction, the question whether the evidence at the preliminary hearing supported probable cause is moot. 'If there is insufficient evidence to support the commitment, the defendant cannot be said to be prejudiced where sufficient evidence has been introduced at his trial to support his conviction.' (Iungerich, *supra* [48 L.A. Bar Bull.] at p. 94.)" (*Id.*, at p. 991.)

Hampton's claim of insufficient evidence before the magistrate is not such specie of error that affects the jurisdiction of the superior court in the fundamental sense of legal power to hear and determine the cause. We conclude there was more than sufficient evidence introduced upon his trial to support his conviction. He shows no prejudice. Reversal is not required.

## II

If we overlook the foregoing rules of law compelling affirmance of the judgment and look to the merits of Hampton's assertion of lack

of substantial evidence to authorize a bind over for trial, he still fares no better. Section 872 of the Penal Code provides that if it appears from the preliminary examination that a public offense has been committed, "and there is sufficient cause to believe the defendant guilty thereof," the magistrate must make an order holding him to answer in the superior court. "Sufficient cause" and "reasonable and probable cause" means a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Williams* v. *Superior Court* (1969) 71 Cal.2d 1144, 1147 [80 Cal.Rptr. 747, 81 Cal.Rptr. 761, 458 P.2d 987].)

Such facts need not be of such weight to support a conviction, and an information may not be set aside if there exists some rational ground for assuming the possibility that an offense has been committed and that the defendant is guilty of it. Consequently, every legitimate inference which can be drawn in favor of the information must be; if the appellate court finds *some* evidence to support the commitment, it cannot inquire into the sufficiency of that evidence. (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 38 [121 Cal.Rptr. 269].)

Hampton argues that the prosecution failed to prove all the elements of each charged offense. An examination of the evidence adduced at the preliminary hearing refutes the assertion. Admissible evidence—both direct and circumstantial—was presented as to each element of the crime(s) of which Hampton was accused.

The evidence demonstrates an ongoing scheme based upon an agreement of Hampton and his coconspirators to gain possession of expensive automobiles, purchased (stolen) by the use of forged and counterfeit "cashiers checks," coupled with a plan for sale of these cars to the next class of victims. Hampton was present, knowingly participated in the various aspects of this unlawful scam. The evidence before the magistrate established Hampton as an aider and abettor in the commission of each of the charged substantive crimes. One theft will suffice to illustrate the evidentiary web in which Hampton was caught. In count two Hampton was charged with theft of a Bluebird motor home. Hampton was present in the motor home discussing the manner in which the vehicle was to be driven to, disposed of in Oregon. The motor home would be sold in Oregon because it was "hot" and it would be less likely to be discovered stolen in Oregon. This motor home was in fact driven to Oregon, exchanged for, among other things, a $55,000 check. This check

was given to a coconspirator in Hampton's presence and Hampton was later active in the attempt to cash the check in San Diego. While no witness testifies to a "smoking gun"—to Hampton's actual physical taking of the Bluebird motor home—yet a mass of circumstantial evidence establishes the fact of theft of this vehicle was part and parcel of the ongoing corrupt agreement.

Hampton was an active aider and abettor and coconspirator in a complex car theft and sale scam. Each member of that conspiracy was criminally responsible for the substantive crime(s) committed in furtherance of the corrupt agreement. (*People* v. *Smith* (1966) 63 Cal.2d 779, 794 [48 Cal.Rptr. 382, 409 P.2d 222].)

Judgment is affirmed.

Brown (Gerald), P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 13, 1981.