[No. D006949. Fourth Dist., Div. One. Nov. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN MATTHEW LOFINK, Defendant and Appellant.

**COUNSEL**

J. Peter Axelrod, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Janelle B. Davis and David F. Taglienti, Deputy Attorneys General, for Plaintiff and Appellant.

**OPINION**

**TODD, J.**—A jury convicted Steven Lofink of two counts of inflicting corporal punishment on a child resulting in traumatic conditions (Pen. Code,[1] § 273d) and two counts of willful cruelty toward a child under circumstances likely to cause great bodily harm and death (§ 273a, subd. (1)). The trial court suspended imposition of sentence and placed Lofink on felony probation for five years pursuant to certain conditions, including serving 180 days in local custody. Lofink appeals, contending he has suffered impermissible multiple convictions. We reject this assignment of error as well as Lofink's contentions concerning instructional error and insufficiency of the evidence. Accordingly, we affirm.

FACTS

Nathan Lofink was born on June 27, 1986. His father, Steven Lofink, was not working during the first few months of Nathan's life and remained home with him for long periods of time while Nathan's mother was out. On

---

[1] All statutory references are to the Penal Code unless otherwise specified.

September 10, 1986, Nathan sustained a severe injury to his face while in the care of Steven, who took him to the hospital. Nathan's breathing was obstructed and a doctor called the injuries "potentially life-threatening." Steven offered several explanations for the injury to several different people, all basically indicating Nathan was hurt by falling off a bed and landing on a book or rattle, face first on the carpeted floor. When Nathan's maternal grandmother, Nancy Kenney, learned the child had been hospitalized, she reported to authorities her suspicions the child was being abused. Body X-rays of the child were taken, which revealed three bone fractures: a wrist fracture that appeared to be five to seven days old; a fracture of the right ankle estimated to be three to four weeks old and a fracture to the right rib estimated to be one to two months old. During an interview with police investigator Robert Marquez, Lofink stuck with his original story that Nathan had fallen from the bed. During a second interview the next day Lofink said while he was cradling Nathan in his arms, he lost control when the child became fussy and the child fell to the floor. Lofink told Marquez it was an accident and he did not intend to hurt Nathan. Lofink denied knowing how the fractures occurred but suggested they could have been caused by other children squeezing Nathan or by doctors holding Nathan down in a prior checkup.

Lofink was charged in count I with violating section 273d and in count II with violating section 273a, subdivision (1). These counts related to the facial injuries Nathan sustained on September 10. Lofink was charged in count III with violating section 273d and in count IV with violating section 273a, subdivision (1). Counts III and IV related to bone fractures Nathan sustained between June 27 and September 10.

At trial, two doctors opined the facial injuries were caused by a blow to the face with a blunt object and were inconsistent with Lofink's explanations that the child had fallen from the bed or his arms. A pediatric radiologist opined the fractures to the wrist and ankle were nonaccidental and were typically caused by holding the child by the affected limb and violently jerking or shaking. He opined the rib fracture was caused by a simple blow to the chest and was of the type sometimes associated with auto or bicycle accidents in older children, but was nonaccidental in infants. The prosecution experts opined Nathan was suffering from battered child syndrome, a condition manifested by multiple, normally unexplained injuries occurring over a sustained period of time. Nancy Kenney testified she observed bruises on her grandson's right cheek and forehead in late August.

### DISCUSSION

### I

Lofink raises two arguments with respect to his contention that he suffered impermissible multiple convictions. First, he maintains he could

not properly be convicted of count I as well as count III since both of these counts, as pled in the information, deal with a single offense. For similar reasons, he also argues he could not properly be convicted of counts II and IV. Second, Lofink maintains his convictions under separate child abuse statutes for the same acts or course of conduct constitute impermissible multiple convictions. We take each argument up separately.

## A.

Lofink bases his first argument concerning multiple convictions on the wording of the information. Count I states: "On or about 9-10-86 STEVEN MATTAHEW [*sic*] LOFINK did unlawfully and wilfully inflict upon a child a cruel and inhuman corporal punishment and injury resulting in a traumatic condition, in violation of Penal Code section 273d." Count III states: "On or about the dates between 6-27-86 and 9-10-86 STEVEN MATTHEW LOFINK did unlawfully and wilfully inflict upon a child a cruel and inhuman corporal punishment and injury resulting in a traumatic condition, in violation of Penal Code section 273d."[2] According to Lofink's interpretation, conduct constituting count I is included in count III because September 10 is included within the time frame of count III.[3] However, Lofink's argument ignores the fact that on April 1, 1987, the trial court amended the information by interlineation, adding "(facial injuries)" to counts I and II and "(bone fractures)" to counts III and IV. Thus, it was made clear that count I referred to conduct by Lofink on September 10 that resulted in Nathan's facial injuries, while count III referred to conduct by Lofink occurring between June 27 and September 10 that resulted in bone fractures. Therefore, counts I and III described different and distinct conduct. Lofink's convictions on counts I and III did not constitute improper multiple convictions.[4]

---

[2] Count II states: "On or about 9-10-86 STEVEN MATTHEW LOFINK, under circumstances and conditions likely to produce great bodily harm and death, did wilfully and unlawfully cause and permit a child to suffer, and did inflict on such child unjustifiable physical pain and mental suffering; and, having the care and custody of such child, wilfully and unlawfully caused and permitted the person and health of such child to be injured, and wilfully and unlawfully caused and permitted such child to be placed in such situation that its person and mental health is endangered in violation of Penal Code section 273a(1)."

Count IV states: "On or about the dates between 6-27-86 and 9-10-86 STEVEN MATTHEW LOFINK, under circumstances and conditions likely to produce great bodily harm and death, did wilfully and unlawfully cause and permit a child to suffer, and did inflict on such child unjustifiable physical pain and mental suffering; and, having the care and custody of such child, wilfully and unlawfully caused and permitted the person and health of such child to be injured, and wilfully and unlawfully caused and permitted such child to be placed in such situation that its person and health is endangered, in violation of Penal Code section 273a(1)."

[3] Similarly, Lofink argues count II is included in count IV because September 10 is within the time frame delineated in count IV.

[4] Applying the same analysis to counts II and IV, we reject Lofink's contention regarding those counts.

## B.

In his second argument concerning multiple conviction, Lofink contends his convictions of two separate child abuse statutes for the same acts or course of conduct were impermissible.

■ Section 954 sets forth the general rule that defendants may be charged with and convicted of multiple offenses based on a single act or an indivisible course of conduct. It provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense. . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."

There is no doubt Lofink was properly *charged* with corporal punishment and willful cruelty to a child in counts I and II for the facial injuries Nathan sustained on September 10 and with the same charges in counts III and IV for the bone fractures Nathan sustained between June 27 and September 10. These charges constitute "different statements of the same offense" and are authorized under section 954. Lofink's conviction of both offenses for his act or course of conduct is also authorized since section 954 states a defendant may be convicted of "any number of the offenses charged."[5]

Section 954, however, does not address the thorny issue of multiple punishment. ■ Common law tradition and constitutional prohibitions provide limited protections against multiple punishment, including the rule prohibiting conviction for "necessarily included offenses." (Johnson, *Multiple Punishment* (1970) 58 Cal.L.Rev. 357, 357-358.) A lesser offense is "necessarily included" within a greater offense only when it is impossible to commit the greater without also committing the lesser. (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512].) In this state, it is well settled that a defendant may not be convicted of both a greater and lesser included offense. (*People* v. *Cole* (1982) 31 Cal.3d 568, 582 [183 Cal.Rptr. 350, 645 P.2d 1182]; *People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Bauer* (1969) 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Greer, supra,* 30 Cal.2d at p. 604.) But this rule provides no comfort to Lofink, who was convicted of violating section 273d and section 273a, subdivision (1), and who concedes the two statutes contain different elements and neither is a lesser included offense of the other. A similar concession was adopted by the court in *People* v. *Sheffield* (1985) 168 Cal.App.3d 158, 163 [214 Cal.Rptr. 40].)

[5] Multiple convictions for a single act or indivisible course of conduct have frequently been affirmed. See *People* v. *Miller* (1977) 18 Cal.3d 873, 884-885 [135 Cal.Rptr. 654, 558 P.2d 552]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 639-640 [105 Cal.Rptr. 681, 504 P.2d 905].)

Lofink relies on *People* v. *Greer, supra,* 30 Cal.2d 589, where the Supreme Court held the defendant could not be convicted of both statutory rape and lewd and lascivious conduct. In *Greer,* the court concluded that while statutory rape and lewd and lascivious conduct were not necessarily included offenses, they were analogous because the wording of the lewd conduct statute specifically included the offense of statutory rape as a type of lewd conduct. *Greer* thus created the rule that "specifically included offenses," also could not give rise to multiple convictions. *Greer* does lend some support to Lofink's argument, but we do not find it controlling here, particularly in light of *People* v. *Pearson* (1986) 42 Cal.3d 351 [228 Cal.Rptr. 509, 721 P.2d 595].

In *Pearson,* the Supreme Court cast doubt upon the soundness of *Greer*'s "specifically included offenses" rule. The *Pearson* court said: "To begin with, strict application of the rule conflicts with the plain language of section 954, which . . . does not contemplate exceptions for 'specifically included' offenses. . . . At the beginning of its discussion the [*Greer*] court posed the question whether defendants could be *convicted* of lewd conduct and rape based on the same act. (*People* v. *Greer, supra,* 30 Cal.2d at p. 601.) During the discussion, however, it used the terms 'conviction' and 'punishment' interchangeably, suggesting that the court may have actually been addressing the issue of whether multiple punishments, not multiple convictions, could arise from charges of statutory rape and lewd conduct based on the same act. In fact, the court even rephrased the question in terms of punishment, declaring: 'This court has not considered until now . . . whether a defendant may be *punished* for the same act under both section 288 and another section of part one of the Penal Code.' (*Id.* at p. 603, italics added.) Finally, the discussion of specifically included offenses was essentially dictum because the court had already determined that the judgment would be reversed on other grounds before it reached this issue." (*People* v. *Pearson, supra,* 42 Cal.3d at pp. 357-358.)[6] The *Pearson* court then explicitly declined to reverse the defendant's convictions of statutory sodomy on the proposed ground that sodomy is a "specifically included offense" within lewd conduct. (*Id.* at p. 358.)

██ In light of *Pearson's* reluctance to extend the prohibition against multiple convictions to "specifically included offenses," we decline to do so

---

[6]Lofink also relies on *People* v. *Craig* (1941) 17 Cal.2d 453 [110 P.2d 403], where the Supreme Court held the defendant could not be convicted of both rape and statutory rape based upon a single act of intercourse committed without the consent and against the will of a 16-year-old girl. The court found the statutory rape there was included in the rape. The *Craig* court noted that statutory rape at that time was proscribed under a subdivision of the rape statute rather than a separate statute. The court said: "We conclude that only one *punishable* offense of rape results from a single act of intercourse, though it may be chargeable in separate counts when accomplished under the varying circumstances specified in the subdivisions of section 261 of the Penal Code." (*Id.* at p. 458, italics added.)

*Pearson*'s analysis of *Greer* applies equally to *Craig.*

as well. (See *People* v. *Superior Court* (*Himmelsbach*) (1986) 186 Cal.App.3d 524, 535, fn. 7 [230 Cal.Rptr. 890].)

We adopt this position for two reasons. First, *Pearson* is our high court's most recent pronouncement on the subject and is considerably more current than the 1947 decision in *Greer*. Second, *Pearson* teaches that the focus in multiple conviction cases, such as this one, should be in protecting the defendant from unwarranted multiple punishment. (See *Pearson, supra,* 42 Cal.3d at pp. 359-363.) It is important in this analysis to note that allowing the multiple convictions to stand does not result in multiple punishment. Section 654 bars multiple punishment, providing in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."[7]

In *Pearson,* the court observed: " '[C]onduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished.' " (*People* v. *Pearson, supra,* 42 Cal.3d at p. 359, citing *People* v. *McFarland* (1962) 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].)

*Pearson* goes on to reiterate the proper procedure to avoid double punishment in such cases: " '[E]liminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned.' " (*People* v. *Pearson, supra,* 42 Cal.3d at pp. 359-360.)

Here, the trial court placed Lofink on probation. Therefore, he did not suffer any impermissible double punishment. The charging was proper as were the convictions.

## II

■ Lofink contends it was error for the trial court to refuse to instruct the jury that section 273a, subdivision (2), is a lesser related offense of section 273d (counts I and III). The contention lacks merit.

Here, the trial court instructed section 273a, subdivision (2), is a lesser included offense of section 273a, subdivision (1) (counts II and IV). The

---

[7]In *People* v. *Miller, supra,* 18 Cal.3d 873, 885, the court observed: " 'The proscription against double punishment . . . is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (Quoting *People* v. *Bauer, supra,* 1 Cal.3d 368, 376.)

trial court also instructed that battery (§ 242) is a lesser-included offense of section 273d.

In *People* v. *Geiger* (1984) 35 Cal.3d 510, 526 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], the Supreme Court held that upon a defendant's request the trial court must instruct on lesser related offenses if there is some basis on which the jury could find the offense to be less than the charge. However, *Geiger* sets up the following criteria for the rule: (1) there must be some basis, other than an unexplainable rejection of the prosecution evidence, on which the jury could find the offense to be less than the charge; (2) the lesser related offense must be closely related to the charge and shown by the evidence; and (3) the instruction must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. (*Id.* at pp. 531-532.)

Lofink does not meet the first criterion in the *Geiger* test—there was no basis other than an unexplainable rejection of the prosecution evidence on which the jury could find the offense to be less than that charged. Section 273a, subdivision (2), refers to willful cruelty "under circumstances or conditions other than those likely to produce great bodily harm or death . . . ." With respect to count I, the prosecution presented evidence that Nathan's "potentially life-threatening" facial injuries were not caused by an accidental fall. With respect to count III involving the three bone fractures to a child less than six months old, the prosecution witnesses likewise ruled out accidental causes.

Moreover, the trial court properly instructed the jury that battery is a lesser-related offense for counts I and III. Thus, if the jury was not convinced beyond a reasonable doubt that Lofink was guilty of violating section 273d in counts I and III, it could have convicted him under the lesser-related offense of misdemeanor battery for those two counts. In *Geiger,* the court said: "The right to instructions on related offenses exists only to enable the jury to determine fairly the issues presented by the evidence and in so doing to avoid any incentive to convict the defendant of a greater offense than that which he committed." (*People* v. *Geiger, supra,* 35 Cal.3d at p. 531.) Here, the battery instruction allowed the jury to fairly determine the issues presented by the evidence.

### III

Lofink contends insufficient evidence was presented at the preliminary hearing to support a probable cause finding on counts III and IV relating to the bone fractures.

We need not go to the merits of this argument because it is well settled that irregularities in the preliminary hearing which are not jurisdic-

tional in the fundamental sense require reversal only if the defendant can show he was deprived of a fair trial or otherwise suffered prejudice as a result of the error. (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].)

In *People* v. *Hampton* (1981) 116 Cal.App.3d 193 [172 Cal.Rptr. 25], this court observed: " 'Where, as here, the evidence produced at trial amply supports a conviction, the question whether the evidence at the preliminary hearing supported probable cause is moot. "If there is insufficient evidence to support the commitment, the defendant cannot be said to be prejudiced where sufficient evidence has been introduced at his trial to support his conviction." [Citation.]' " (*Id.* at p. 199, quoting *People* v. *Chambers* (1980) 108 Cal.App.3d 985, 990-991 [166 Cal.Rptr. 815].) We conclude there was more than sufficient evidence introduced at Lofink's trial to support his convictions. There was no prejudice. Reversal is not required.

## DISPOSITION

Judgment affirmed.

Work, Acting P. J., and Benke, J., concurred.