Filed 11/9/20

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | No. BR 054562 |
| Plaintiff and Respondent, | ) ) | East Los Angeles Trial Court |
| v. | ) ) | No. 8CJ01331 |
| JULIUS DOBBS BURTON JR., | ) ) | |
| Defendant and Appellant. | ) ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, East Los Angeles Trial Court, Spurgeon E. Smith, Judge.  Probation Order Reversed.

Andrea Keith, Esq. for Defendant Julius Dobbs Burton Jr.

Michael N. Feuer, City Attorney; Michelle McGinnis, Supervising Deputy City Attorney; and Serena Christion, Deputy City Attorney, for the City of Los Angeles.

\*          \*          \*

1

INTRODUCTION

We hold here that amendments to Penal Code section 1203a, which generally limit the maximum length of probationary terms for misdemeanor offenses to one year, apply retroactively, to a case which will not become final on appeal as of the January 1, 2021 effective date of the statute. The amendments ameliorated the burdens on persons' lives and potential carceral consequences of being found in violation of probation, and applying the changes immediately would best serve the Legislature's intent to "allow[] for the reinvestment of funding into supportive services for people on misdemeanor . . . probation rather than keeping this population on supervision for extended periods" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 6, 2020, p. 3). (See *People v. Conley* (2016) 63 Cal.4th 646, 657 ["[I]n the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not"].)

Defendant Julius Dobbs Burton Jr. was found guilty in a jury trial of misdemeanor violations of the City of Los Angeles Municipal Code and Los Angeles County Code pertaining to safety provisions in a building which he controlled as the beneficiary of the owner's trust.[1] The court placed defendant on probation for 36 months, and he appealed the judgment. The sole contention initially raised on appeal was the court erred in ordering, as a probation condition, that he "annually provide to the court and the People a list of properties in which defendant has an ownership interest." Defendant maintained the condition was invalid because

---

[1]The convictions included violations of Los Angeles Municipal Code sections 57.110 (erecting, constructing, or altering a building in violation of the Fire Code, count 4), 57.315.3.2 (combustible materials in exits, count 11), and 57.605.1 (unlawful electrical wiring, count 12), and Los Angeles County Code violations for having damaged and unfinished flooring (§ 11.20.160, count 28), and failing to maintain hot and cold running water (§ 11.20.190, count 36). Several other counts were dismissed pursuant to Penal Code section 1118.1 and at the request of the prosecutor. The jury found defendant not guilty of three counts: Los Angeles Municipal Code sections 57.310 (failing to prohibit smoking where conditions made smoking a hazard, count 6), 57.311.3 (failing to remove accumulations of flammable materials, count 10), and 57.1006 (failing to maintain adequate egress illumination level, count 19).

it was unrelated to future criminal activity, and because it violated his Fifth Amendment privilege against self-incrimination. As discussed below, we reject these arguments.

While the appeal was pending, after the Governor signed Assembly Bill No. 1950 into law on September 30, 2020, we notified the parties pursuant to Government Code section 68081 that they could submit supplemental briefs on whether the amendments to Penal Code section 1203a applied retroactively, and whether the 36-month probation term, which included the condition at issue in the present appeal, should be reversed and the case be remanded for the court to impose a one-year term of probation. We considered the briefs filed by the People and defendant, and conclude reversal of the 36-month term is required and the court on remand must impose a term of probation not to exceed one year.

BACKGROUND

At trial, evidence was presented that fire inspectors and other government personnel responded on April 7, 2017 to a building located at 8129 South San Pedro Street in Los Angeles. Although the building was zoned only for commercial use, seven persons were found living inside, two of whom were bedridden. The interior was inadequately illuminated, some of the exits were blocked, there were "illegal walls" which failed to reach up to the ceiling, there were bars on the windows which could not be opened to allow persons to exit, and fire detectors were situated too high to function properly. There were also debris and other material accumulated throughout the location. The building was evacuated due to the imminent threat for the safety of the occupants, and four residents were transported to the hospital for medical care.

Cal Burton, defendant's father, was the trustee of the trust that owned the building, and defendant was the beneficiary. Robin Massimo was a real estate agent who was hired to manage the property through a contract signed by defendant as "the owner," and he testified that he followed defendant's commands with regard to the upkeep and collection of rents from occupants of the property. Michelle LeCavalier, a Chief Environmental Health Specialist for Los Angeles County, testified she conducted a hearing with regard to the violations discovered

3

in the building, and she asked defendant if it was his property. LeCavalier testified defendant, rather than deny ownership or control, responded, "he had been sick for a long time and had been pretty much out of the business or out of the property and didn't know much about what was going on there."

On May 28, 2019, when defendant was sentenced, the prosecutor told the court defendant had owned five properties, but as of the date of sentencing, they had all been sold. The prosecutor indicated she feared that, if defendant bought or acquired control of other buildings during the court's probationary period, defendant might allow the locations to fall out of compliance and pose a safety threat, as he did with the 8129 South San Pedro location. The prosecutor noted defendant could control buildings without personally purchasing them, such as through a limited liability company or by otherwise acquiring a controlling interest, and that simply running defendant's name in government databases would not disclose his ownership interest. To facilitate compliance with terms of probation requiring he obey all laws and building codes, the prosecutor asked that defendant be ordered to provide an annual list of properties that came under his control so the health and safety officials could check the locations.

Over the objection by defense counsel that such a condition would be unreasonable and violate defendant's privilege against self-incrimination, the court adopted the prosecutor's proposal. The court stated it was "concerned about future violations for properties that he owns that may not be directly and easily traceable to him. He could escape conceivably probation violations because of that unique structure." The court indicated it was "going to order him to obey all laws, including building codes, fire codes, and so on and that includes properties he has a legal interest in. But how do we enforce that since we don't know what properties he may own?"

As to each of defendant's 16 counts, the court suspended imposition of sentence and placed defendant on probation for 36 months. Conditions of probation included that defendant pay a $2,900 fine plus penalty assessments, make restitution to the Los Angeles Fire

4

Department and Los Angeles Department of Public Health totaling $16,475.35, and that he obey all laws, rules, and orders of the court.

The court further ordered defendant "annually provide to the court and the People a list of properties in which defendant has an ownership interest." The court explained to defendant an "ownership interest" included when his name appears on a deed, when he is the chief executive officer or chief financial officer or managing member of a corporation that owns property, and where he is a limited partner owning property. The court set a date for defendant to provide the first listing of properties where he had an ownership interest or a statement indicating he had no such interest, and further ordered, "then he will be required to provide a list on the anniversary of his sentence each year and report to the People. No hearing required unless one of the parties brings to the court's attention, more than likely the People for the need for a potential probation violation hearing. [¶] In other words, essentially, the People would be calendaring a probation violation hearing based on their investigation." Defendant stated he understood and accepted the terms of his probation.

DISCUSSION

Reasonableness

As to whether the probation condition at issue is reasonable, we review the condition for abuse of discretion. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), fn. omitted; accord, *People v. Anderson* (2010) 50 Cal.4th 19, 32.) "The test is . . . in the conjunctive, that is, the three factors must all be found to be present in order to invalidate a condition of probation." (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65, fn. 3; see *Lent*, *supra*, 15 Cal.3d at p. 486, fn. 1.)

Defendant asserts the condition of probation requiring him to annually provide a list in which he has an ownership interest was unreasonable because it failed to satisfy the third category in *Lent*, arguing the condition was not reasonably related to defendant's future

5

criminality. As mentioned above, because the test is in the conjunctive, even if the third category was not satisfied, the condition is valid, because it satisfies the first category (having a relationship to the crime of which defendant was convicted). Defendant was found guilty of crimes pertaining to the unsafe condition of a building that he controlled by virtue of being the beneficiary of a trust that owned the property. Ordering him, as a condition of probation, to provide a list of properties in which he acquired an ownership interest to ensure his properties were safe and code-compliant, was related to the offenses that the jury found him guilty of.

In addition, the condition of probation was proper because defendant failed to show it was not reasonably related to defendant's future criminality. To support conditions of probation under the third category in *Lent*, there must be facts in the record documenting a "'"'reason to believe the current restriction will serve the rehabilitative function of precluding [the defendant] from any future criminal acts.'"'" [Citations.]" (*People v. Bryant* (2017) 10 Cal.App.5th 396, 404–405.)

The court was "concerned about future violations for properties that [defendant] owns that may not be directly and easily traceable to him," and ordered him to provide a list of properties to make it easier to monitor the condition of probation that defendant obey all laws, including building and fire codes. Being required to provide a list served the purpose of deterring defendant from allowing properties to become unsafe and in violation of codes, because, if defendant was aware that the People could readily determine and have inspected properties he controlled, defendant would be more likely to make sure his properties did not violate the law. (Cf. *People v. Olguin* (2008) 45 Cal.4th 375, 380–381 ["A condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality'"].) The court did not abuse its discretion in ordering defendant to provide the list.

Constitutionality

With regard to the issue of whether the probation condition was constitutional, we review the question de novo. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.) "If a

6

probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens."' [Citation.]" (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355.)

Defendant argues the probation condition violated his privilege to remain silent under the Fifth Amendment because it "gives [defendant] the choice of either waiving his right against self-incrimination and providing the prosecution with a list of all his properties which may or may not be in compliance with the codes or violating his probation and potentially facing criminal penalties." Defendant cites two cases in support of his argument, *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*) and *People v. Forney* (2016) 3 Cal.App.5th 1091 (rev. gr., 12/14/2016, S238013). Because the California Supreme Court granted review in the latter case and remanded the matter for the Court of Appeal to reconsider its opinion, it is not citable as authority. (See Cal. Rules of Court, rule 8.1115(e)(2).) Defendant's reliance on the United States Supreme Court's opinion is misplaced.

In *Murphy*, the defendant, who had pleaded guilty to a reduced charge of false imprisonment after being charged with criminal sexual misconduct, was ordered as a condition of his probation to cooperate with the probation officer in a sexual offender treatment program, and to "be truthful with the probation officer 'in all matters.'" (*Murphy*, *supra*, 465 U.S. at p. 422.) While meeting with the probation officer, defendant admitted he had committed a rape and murder in an unrelated case, and the defendant's statements were used against him in indicting him in the case. The United States Supreme Court held the statements were inadmissible in the rape and murder prosecution. (*Id.* at p. 423.) *Murphy* noted, "The Fifth Amendment, in relevant part, provides that no person 'shall be compelled in any criminal case to be a witness against himself,'" and found, a person "does not lose this protection by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted." (*Id.* at p. 426.)

In the present case, the People were not seeking to use any statements made by defendant against him in prosecuting him for new offenses. *Murphy* bars the use of incriminating statements made as a condition of probation in the prosecution of a future crime. To the extent defendant would be required to provide a list of properties in which his ownership interest *could* result in his probation being revoked, there would be no Fifth Amendment violation. (See *Murphy*, *supra*, 465 U.S. at p. 435, fn. 7 ["a [s]tate may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination"]; see also *People v. Garcia* (2017) 2 Cal.5th 792, 803 [upholding a condition of probation that a person waive the privilege against self-incrimination and submit to polygraph examinations, so long as the condition is construed to mean that the person is required to answer on pain of probation revocation should the person refuse and that the compelled responses may not be used against the person in a subsequent criminal prosecution].)

Defendant was ordered to provide an annual list of properties in which he has an ownership interest to facilitate administering compliance with his conditions of probation. The court stated it was "concerned about future violations for properties that he owns that may not be directly and easily traceable to him," and that defendant "could escape conceivably probation violations because of that unique structure." The court indicated that, based on inspections of any property on the list, the People may alert the court "for the need for a potential probation violation hearing," and in such an instance, "the People would be calendaring a probation violation hearing based on their investigation." We thus construe the condition of probation to mean that defendant must provide the required list, and conclude there was no constitutional violation.

One-Year Limit to Length of Probation

*Changes to the law*

Prior to its amendment by Assembly Bill No. 1950, at the time defendant was sentenced, Penal Code section 1203a provided, "In all counties and cities and counties the courts therein,

8

having jurisdiction to impose punishment in misdemeanor cases, shall have the power to refer cases, demand reports and to do and require all things necessary to carry out the purposes of Section 1203 of this code[2] insofar as they are in their nature applicable to misdemeanors. Any such court shall have power to suspend the imposing or the execution of the sentence, and to make and enforce the terms of probation for a period *not to exceed three years*; provided, that when the maximum sentence provided by law exceeds three years imprisonment, the period during which sentence may be suspended and terms of probation enforced may be for a longer period than three years, but in such instance, not to exceed the maximum time for which sentence of imprisonment might be pronounced." (Italics added.) A longer probationary period than three years could be imposed pursuant to the statute, "when the maximum sentence provided by law exceeds three years imprisonment," and the probationary provisions of other statutes also allow for longer periods (see, e.g., Veh. Code, § 23600, subd. (b)(1) [five-year maximum probation term for driving under the influence]; Health & Saf. Code, § 11550, subd. (a) [same for being under the influence of a controlled substance]).

Assembly Bill No. 1950 amended Penal Code section 1203a, to provide, "(a) In all counties and cities and counties, the courts therein, having jurisdiction to impose punishment in misdemeanor cases, may refer cases, demand reports, and to do and require anything necessary to carry out the purposes of Section 1203, insofar as that section applies to misdemeanors. The court may suspend the imposition or execution of the sentence and make and enforce the terms of probation for a period *not to exceed one year*. [¶] (b) The one-year probation limit in subdivision (a) shall not apply to any offense that includes specific probation lengths within its provisions." (Italics added.)[3] The Legislature deleted from the statute the power of a court to impose a term longer than three years "when the maximum sentence provided by law exceeds three years imprisonment."

---

[2]Penal Code section 1203 sets forth procedures for placing persons on probation.

[3]Assembly Bill No. 1950 also amended Penal Code section 1203.1, pertaining to felony cases, allowing a court, except as specified, to impose a probationary term of no more than two years.

*Retroactivity*

- Discerning the effective date of the amendments

"Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner.  (Cal. Const., art. IV, § 8, subd. (c)(1).)" (*People v. Henderson* (1980) 107 Cal.App.3d 475, 488.)  The amendments to the law were not passed as urgency legislation.  (See Stats. 2020, ch. 328.)  Hence, the new law will become effective on January 1, 2021.

"'The Legislature ordinarily makes laws that will apply to events that will occur in the future.  Accordingly, there is a presumption that laws apply prospectively rather than retroactively.  But this presumption against retroactivity is a canon of statutory interpretation rather than a constitutional mandate.  [Citation.]  Therefore, the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.  [Citation.]  In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the Legislature . . . .  [Citation.]'" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307; accord, *People v. Conley*, *supra*, 63 Cal.4th 646, 659.)  This is an issue of law, which an appellate court assesses de novo.  (*People v. Monk* (2018) 21 Cal.App.5th Supp. 1, 4.)

In engaging in the analysis, we are guided by the principle of law set forth by the California Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id.* at p. 745.)  As more recently described by the California Supreme Court in *People v. Conley*, *supra*, 63 Cal.4th at page 657, "The *Estrada* rule rests on an inference that, in

10

the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not."

Defendant asserts *Estrada* requires that the amendments be applied retroactively.[4] The People's sole argument against applying *Estrada* in this case is that the new law will become effective on January 1, 2021, and thus, because the law is not currently in effect, it cannot apply to defendant. We are unpersuaded.

When *Estrada* applies, "a defendant generally is entitled to benefit from amendments that become effective while his case is on appeal." (*People v. Vieira* (2005) 35 Cal.4th 264, 305.) "The key date is the date of final judgment. If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, . . . it, and not the old statute in effect when the prohibited act was committed, applies." (*Estrada*, *supra*, 63 Cal.2d at p. 744.) A case is not final for purposes of *Estrada*, "until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." (*People v. Vieira*, *supra*, 35 Cal.4th at p. 306.) A final judgment will not be rendered on appeal here until after at least 30 days following the date our opinion is filed. (Cal. Rules of Court, rule 8.888.) Only after a petition for review has been adjudicated in the state court of last resort, or the time for asking for review expires, can a party petition for a writ of certiorari in the United States Supreme Court, and such a petition is timely when filed "within 90 days after entry of the judgment." (U.S. Supreme Ct. Rules, rule 13(1).) Because defendant's case will not be final on appeal until well after January 1, 2021, assuming *Estrada* applies, he will have the right to be resentenced under the new law. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 342 [applying, in a Nov. 20, 2019-filed opinion, ameliorative amendments that became effective on Jan. 1, 2020, to a defendant because "[i]t is clear that [defendant] will not exhaust his appeal rights before January 1, 2020. As such, he benefits from [the amendments]"].)

---

[4]Defendant also maintains it would be unconstitutional to fail to apply the amendments retroactively. But, given our disposition under *Estrada*, we do not decide the constitutional issue.

11

- Assessing the applicability of *Estrada*

In *Estrada*, the California Supreme Court agreed with the petitioner's contention that he was "entitled to the ameliorating benefits" of a new statute that lessened the maximum sentence that could be imposed for the crime of escape from prison, even though he committed the offense prior to when the statute became effective. (*Estrada*, *supra*, 63 Cal.2d at p. 744.) Courts have also relied on *Estrada* to find statutes are retroactive even when they have no ameliorative effect on punishment. For example, it has been held that, in the absence of a savings clause, the repeal of a criminal statute prevents the charging of a person with a statutory crime. (*People v. Rossi* (1976) 18 Cal.3d 295, 304.) The enactment of a new affirmative defense has been applied to cases not final on appeal. (See *People v. Wright* (2006) 40 Cal.4th 81, 94–95.) The California Supreme Court has "also applied the *Estrada* rule to statutes that merely made a reduced punishment *possible*." (*People v. Frahs* (2020) 9 Cal.5th 618, 629 [statute allowing judges to grant mental health diversion applied to all eligible defendants whose cases were not final on appeal], citing *People v. Superior Court (Lara)*, *supra*, 4 Cal.5th at p. 307 [statute eliminating a prosecutor's ability to file charges against a minor in adult court without a judicial finding of unfitness held retroactive], and *People v. Francis* (1969) 71 Cal.2d 66, 76 [same result for statute modifying the punishment for possession of marijuana, which had previously been a straight felony, to permit it to be treated as a misdemeanor offense].)

It is unquestionable the reduction of the maximum amount of time a person may be placed on probation from three years (or more), to one year, inures greatly to the benefit of many persons subject to supervision. At any time a person is on probation, the court has the authority to revoke probation and sentence the person to jail, and a probation violation may even be based on violating court rules that do not amount to new crimes. (See Pen. Code, § 1203.2, subds. (a) & (c).) The longer a person is on probation, the potential for the person to be incarcerated due to a violation increases accordingly. The possibility of incarceration due to being on probation for periods longer than a year based on minor probation violations was relied on by the Legislature in enacting the provision lowering the maximum probationary period. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020

12

Reg. Sess.), as amended May 6, 2020, p. 5 ["If the fact that an individual is on probation can increase the likelihood that they will be taken back into custody for a probation violation that does not necessarily involve new criminal conduct, then shortening the period of supervision is a potential avenue to decrease individuals' involvement in the criminal justice system for minor infractions"].)

Moreover, while a person is on probation, the individual may lawfully be ordered to comply with numerous and varied conditions, including, as in this case, ordering the person to provide prosecutors a list of properties they own. In other situations, they may be subject to search and seizure by law enforcement with or without a warrant (see *People v. Robles* (2000) 23 Cal.4th 789, 795), submitting urine samples for narcotics use monitoring (see *People v. Beagle* (2004) 125 Cal.App.4th 415, 419), and regularly interrupting persons' work and schooling and traveling to court for progress reports. In addition, when a court's orders are violated, courts have power to increase a probationer's supervision and intensify restrictions by modifying probation conditions. (Pen. Code, § 1203.3, subd. (a).) The longer the length of probation, the greater the encroachment on a probationer's interest in living free from government intrusion. The concern that, in practice, probation can have punitive effects was also relied on by the Legislature in enacting the new law. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 6, 2020, p. 5 [noting studies "argue that rather than being rehabilitative, the experience of probation can actually increase the probability of future incarceration . . . Scholars argue that the enhanced restrictions and monitoring of probation set probationers up to fail, with mandatory meetings, home visits, regular drug testing, and program compliance incompatible with the instability of probationers' everyday lives"].)

It has been noted, a "[g]rant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither 'punishment' [citation] nor a criminal 'judgment' [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citations], and its primary purpose is rehabilitative in nature [citation]." (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 [probation is not a form of

punishment for purposes of applying the rule that a trial court's jurisdiction to modify a sentence continues after sentence is pronounced and entered in the court minutes, until the time the court issues and delivers a commitment document to prison authorities]; see also *People v. Benitez* (2005) 127 Cal.App.4th 1274, 1278 [no right to jury trial on facts rendering a person ineligible for probation because *Apprendi v. New Jersey* (2000) 530 U.S. 466 applies only to facts that increase punishment]; *People v. Lofink* (1988) 206 Cal.App.3d 161, 168 [probation not "punishment" for purposes of the bar to multiple punishment in Pen. Code, § 654]; *People v. Gilchrist* (1982) 133 Cal.App.3d 38, 47–48 [persons supervised on probation not similarly situated as persons serving a prison sentence for purposes of equal protection analysis as "[p]robation is not a form of punishment"].)

But, although probation is not considered "punishment" for specified purposes, the presumption of legislative intent in *Estrada* is not confined to only situations when jail and prison sentences are directly decreased due to new laws. A court may presume an intent to broadly apply laws even when they "merely [make] a reduced punishment *possible*." (*People v. Frahs*, *supra*, 9 Cal.5th at p. 629.) The Legislature in this instance clearly contemplated that reducing the amount of time probation can last was significantly beneficial to persons on probation, and that concomitantly, being on probation for longer than a year was detrimental "rather than being rehabilitative." As previously noted, "a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible" (*People v. Conley*, *supra*, 63 Cal.4th at p. 657), not solely to changes that reduce "punishment" as defined in contexts different than assessing whether *Estrada* is applicable. We thus conclude *Estrada* applies here, to a change in the law significantly reducing by two-thirds the amount of time a person can be placed on probation in a misdemeanor case.

- Examining whether there is an indication to not apply the statute retroactively

We find there is no provision in the text of the law stating the law must be applied only prospectively. We further note the bill's legislative history also does not show an intent to bar retroactivity.

14

As noted by *People v. Conley*, *supra*, 63 Cal.4th at page 656, "Because the *Estrada* rule reflects a presumption about legislative intent, rather than a constitutional command, the Legislature (or [as applicable in a given situation], the electorate) may choose to modify, limit, or entirely forbid the retroactive application of ameliorative criminal law amendments if it so chooses." There is no explicit indication in the amendments to Penal Code section 1203a that indicates an intent to apply the provisions to cases not final as of January 1, 2021.

Nonetheless, the absence of a provision in the text is not dispositive, because "[o]ur cases do not 'dictate to legislative drafters the forms in which laws must be written'" to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the [legislative body] demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' [Citations.]" (*Id.* at pp. 656–657.) The history of legislation may properly be inspected to determine its intent. (See *People v. Frahs*, *supra*, 9 Cal.5th at p. 635 ["Nor do we perceive in the legislative history a clear indication that the Legislature did not intend for the statute to apply retroactively"].)

The Legislature amended the law out of a concern that there were an enormous number of people on probation in the state, that probationers often wind up being incarcerated based on violating their probation for transgressing court orders not amounting to new crimes, and that public safety may best be maintained by supervising individuals for shorter periods and allocating the resources saved on incarceration in intensifying efforts to rehabilitate offenders.

Bill analyses noted, "According to the author, 'California's adult supervised probation population is around 548,000 – the largest of any state in the nation, more than twice the size of the state's prison population, almost four times larger than its jail population and about six times larger than its parole population.'" (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 6, 2020, p. 3; Assem. Floor Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 21, 2020, p. 1 [same].) The bill's author indicated, "The Prison Policy Institute has found that like incarceration, probation affects already marginalized populations in troubling ways. Black Americans make up 13% of the U.S. adult population, but 30% of those under community supervision. Additionally,

15

probation fees are an enormous burden on the poor.  [¶] A 2018 Justice Center of the Council of State Governments study found that a large portion of people violate probation and end up incarcerated as a result.  The study revealed that 20 percent of prison admissions in California are the result of probation violations, accounting for the estimated $2 billion spent annually by the state to incarcerate people for supervision violations.  Eight percent of people incarcerated in a California prison are behind bars for probation violations.  Close to half of those violations are technical and minor in nature, such as missing a drug rehab appointment or socializing with a friend who has a criminal record.  And yet despite the fact that these technical violations (non-crimes) do not threaten our communities, they cost taxpayers at least $235 million per year." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended June 10, 2020, p. 4.)

The Legislature found "Research by the California Budget & Policy Center shows that probation services, such as mental healthcare and addiction treatment, are most effective during the first 18 months of supervision.  Research also indicates that providing increased supervision and services earlier reduces an individual's likelihood to recidivate." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 6, 2020, p. 3; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended June 10, 2020, p. 4.)  "AB 1950 would restrict the period of adult probation for a misdemeanor to no longer than one year, and no longer than two years for a felony.  In doing so, AB 1950 allows for the reinvestment of funding into supportive services for people on misdemeanor and felony probation rather than keeping this population on supervision for extended periods." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 6, 2020, p. 3.)  The Legislature concluded, "AB 1950 creates reasonable and evidence-based limits on probation terms, while lowering costs to taxpayers, allowing for the possible investment of savings in effective measures proven to reduce recidivism and increasing public safety for all Californians." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended June 10, 2020, p. 4.)

No reason showing an intent to bar application of the law to persons whose convictions were not final at the time the law became effective is evident from the history of the enactment. No reason is apparent to allow persons to be incarcerated for probation violations and continue to labor under years of probation supervision unless they commit their crimes on or after January 1, 2021. Indeed, we imply an intent that California residents may best be served by realizing the cost savings envisioned by the legislation as soon as possible.

We imply an intent that the reduction in the maximum probationary term for misdemeanor defendants to one year be effectuated anon. Persons whose case is not final on appeal are entitled to benefit from the new provision's ameliorative changes to the law.

*Application to present appeal*

Defendant was convicted of 16 violations involving the Los Angeles Municipal Code and the Los Angeles County Code. Under Penal Code section 1203a, at the time of sentencing on May 28, 2019, since the potential punishment exceeded three years in jail (see Los Angeles Mun. Code, § 1.24.020.A [six-month maximum punishment for each offense]; Los Angeles County Code, § 11.02.080 [same]), the court could have placed defendant on probation for up to eight years (see *Fayad v. Superior Court* (1957) 153 Cal.App.2d 79, 83), but decided 36 months was the appropriate length of the term.

Under newly amended Penal Code section 1203a, the provision allowing for a probationary period of over three years will have been eliminated as of January 1, 2021, and probation in a misdemeanor case will be limited "to one year, regardless of the maximum term of imprisonment." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.), as amended May 6, 2020, p. 4.) The new law states, "The one-year probation limit . . . shall not apply to any offense that includes specific probation lengths within its provisions." (Pen. Code, § 1203a, subd. (b).) But defendant's Los Angeles Municipal Code and Los Angeles County Code violations do not provide for probation of greater length than one year.

As defendant is entitled to have the length of the probationary period shortened to one year, the condition that for 36 months he must annually provide a list of properties he owns,

cannot stand. The court, on remand, must resentence defendant to a one-year maximum term of probation, discounted by the time on probation he has already served.[5]

## DISPOSITION

The judgment, to the extent it imposes a three-year grant of probation, is reversed, and the court is ordered on remand to resentence defendant to no more than one year of probation. The judgment is otherwise affirmed.

_____
Ricciardulli, J.

We concur:


_____                    _____
Kumar, Acting P. J.                                 Murillo, J.*


*Judge of the Los Angeles Superior Court sitting temporarily under assignment by the Chief Justice.

---

[5]The People agree that, assuming we apply the amendments retroactively, the case should be remanded so the court can resentence defendant to up to one year of probation. The People further assert that, on remand, the court should again impose as probation conditions that he pay a fine and make victim restitution and that the sums must "become due immediately, or the trial court must be given the ability to revoke probation of the defendant until all [amounts are paid]." As it is beyond the scope of the appeal, we do not indicate what conditions the court should impose in its new grant of probation, or under what circumstances probation may be revoked. We do note that, with respect to payment conditions, absent a finding a defendant is in violation of probation, a court may only extend a term of probation to the maximum statutory amount allowed by statute so that a person can continue making payments. (*People v. Cookson* (1991) 54 Cal.3d 1091, 1095.)